## Joseph Barden *vs.* Andrew W. Felch.

The shape of land conveyed by this description in a deed: "Beginning at the southerly corner of the premises at a stake by the side of the A. road, from thence running northerly by the B. road till it comes to land of N., from thence southeasterly by land of said N. till it comes to said A. road, from thence westerly by the said A. road to the bounds first mentioned," is not necessarily a triangle.

While a trespasser was maintaining his entry by force and employing his servant to aid him, the servant, for the purpose of maintaining the entry, made an assault upon the owner of the premises, who was withstanding him. *Held,* that the master was liable for the assault, although he told his servant not to touch the owner.

Tort for breaking the plaintiff's close in Groton, and committing an assault and battery upon him. At the trial in the superior court, before *Devens,* J., it appeared that Timothy Stone conveyed to William S. Nutting a parcel of land by deed dated October 21, 1859, and this land by a series of deeds became vested in David Constantine, who conveyed it to William D. Reed in May 1860 ; that the description of the granted premises in each of these conveyances was as follows : " A certain parcel of land, situate in the southerly part of Groton aforesaid, containing, by estimation, one acre and one half, be the same more or less, and bounded and described as follows, namely, beginning at the southerly corner of the premises at a stake and stones by the side of the road leading from Harvard to Groton, from thence running northerly by the Lunenburgh road till it comes to land of Phineas Nutting, from thence southeasterly by land of the said Phineas Nutting till it comes to said Groton road, from thence westerly by the said Groton road to the bounds first mentioned ; " that by deed dated March 13, 1861, Reed conveyed to Daniel Constantine " a certain parcel of land with the buildings

thereon, situated in the southerly part of Groton, containing one half acre more or less, bounded as follows : Beginning at a stone monument on the road leading to Lunenburgh at the land of Joseph Barden, thence running easterly on said road, nine and one half rods, to a stake and stones, thence northerly by my own land about eight rods to a stake and stones, thence westerly to land of Joseph Barden, thence southerly on said Barden's land to the point of beginning, being a part of the same premises I purchased of David Constantine in May 1860 ; " that the plaintiff claimed under Daniel Constantine, and the defendant under a later deed from Reed.

There was conflicting evidence as to the position of the stone monument mentioned in Reed's deed to Daniel Constantine. The plaintiff contended that it was at a point measurement from which would include within the description in the deed the place where the alleged trespass was committed; and the defendant contended that it was at a point measurement from which would exclude that place.

The defendant requested the judge to rule that, by the description in the deed by which the land was conveyed to Reed, " the one and a half acre lot was a triangle." But the judge refused so to rule, and left it to the jury to determine what were the premises conveyed thereby, and the weight to be given to the deeds in connection with the other evidence in the case.

The plaintiff offered evidence tending to show " that the defendant committed the trespass ; that when the defendant entered upon his land he called to the defendant and repeatedly ordered him off his land and his servant with him ; that the servant was ploughing ; that the plaintiff put his hand on the plough and was pushed away therefrom ; that he again made the attempt and was pushed away with great violence and badly injured ; and that he was eighty-four years old." On cross-examination, the plaintiff admitted that he had a bean-pole in his hand and struck the defendant's servant with it after he had first been pushed away from the plough.

The defendant offered evidence tending to show that " he came to the land, accompanied by a servant, to plough upon the land

for the sole purpose of asserting his right to the same; that he took his horse and plough upon the premises, and attached the horse to the plough; that while the servant was standing at the handles of the plough, upon the sidewalk outside of the premises, and the defendant at the horse's head on the land, the plaintiff struck the servant two or three times over the head with the bean-pole, breaking it in several pieces; that the defendant told the servant not to touch the plaintiff; but that, when the plaintiff afterwards struck him with the butt end of the pole, the servant, keeping one hand on the plough, pushed the plaintiff away, and the plaintiff fell down from the push." The defendant contended, upon this evidence, that the plaintiff committed an unjustifiable assault upon the servant, and that the servant acted in self-defence; and requested the judge to rule that he was not responsible for the act of the servant, if done contrary to his express command.

The judge declined to rule, on the foregoing facts, that the assault of the defendant's servant was justifiable, and left that question to the jury, instructing them " that, if the land belonged to the defendant, he had a right to enter upon it and plough it, maintaining his entry by force if necessary; but that, if the land was actually the plaintiff's, or the plaintiff was in possession claiming title, and the defendant had no title, the defendant had no right to enter thereon; that if the defendant was wrongfully maintaining his entry by force, and employing his servant so to do, he was liable for the act of his servant done in maintaining such entry, although the servant used more force than he was authorized by the master to do; and that the plaintiff, if in the right, could only use reasonable force in expelling the defendant, who was not liable for repelling unreasonable force." The jury returned a verdict for the plaintiff, and the defendant alleged exceptions.

*T. Wentworth*, for the defendant.

*R. B. Caverly*, for the plaintiff.

CHAPMAN, C. J. The land in dispute was conveyed by William D. Reed to Daniel Constantine March 13, 1861. It is described as having four sides. But it is part of a larger tract, consisting of one and a half acres, and described in several deeds,

The defendant asked the court to rule that, by the description of the one and a half acre lot in these deeds, it was a triangle. But it is described as bounding on several highways, the courses and boundaries of which are not accurately defined, and also on land of Phineas Nutting, the boundaries of which are not stated. Therefore the question whether the lot was a triangle depended not merely on the language of the deed, as to which no question arose, but upon the application of that language to other evidence, some of which was contradictory. It was a question of fact, and was properly left to the jury. It would have been erroneous for the court to rule as requested.

There was contradictory evidence as to the assault and battery. According to the plaintiff's evidence, it was the joint act of the defendant and his servant. But according to the defendant's evidence it was an act of the servant in self-defence, and contrary to the defendant's express command. The defendant requested the court to rule "that he was not responsible for the act of the servant, if done contrary to his express command." But we think this ruling was rightly refused. Instead of it, the court gave correct instructions. After stating correctly the legal rights of the parties, the court ruled " that, if the defendant was wrongfully maintaining his entry by force, and employing his servant so to do, he was liable for the act of his servant in maintaining such entry, although the servant used more force than he was authorized by the master to do ; and that the plaintiff, if in the right, could only use reasonable force in expelling the defendant, who was not liable for repelling unreasonable force." These instructions were all that the case required. Much depended on the question of title ; and if the defendant was using force wrongfully, and employing his servant to assist him in doing a tortious act, his general purpose, the fact of his presence, his silence while the acts of violence were done, and his whole deportment during the assault and battery by his servant, would be as significant as his previous direction to the servant not to touch the plaintiff. The facts as reported would authorize the jury to find the defendant guilty, notwithstanding that direction.

*Exceptions overruled.*