RACHEL LEVI *vs.* WILLIAM P. B. BROOKS & others.

SIMON LEVI *vs.* SAME.

Suffo.k. Nov. 15, 1876. — Jan. 15, 1877. AMES & LORD, JJ., absent.

A master who orders his servants to go to the house of a person named and remove certain furniture, if a sum due the master thereon is not paid, is liable for a wilful assault, committed by the servants, if done in the execution of the order, and not for some private end or advantage of the servants.

If a declaration alleges a simple assault, and the answer consists merely of a general denial, the defendant cannot justify by showing that under certain leases signed by the plaintiff, the defendant had a right to enter upon the plaintiff's premises, "without being guilty of any trespass or wrong."

TWO ACTIONS OF TORT. The declarations in both cases alleged that the "defendants by themselves, or their servants acting under their orders, with force and arms, did an assault make upon the body of the plaintiff." Answer, in each case, a general denial.

At the trial in the Superior Court, before *Allen*, J., it was admitted by the plaintiffs, that none of the alleged assaults or trespasses were done by the defendants personally, or in their presence, or by their express order or request, or with their assent or actual knowledge. The plaintiffs offered evidence tending to show that on March 17, 1875, three persons, Maine, Carroll and Hanson, came to the house and shop occupied by the plaintiffs in East Boston ; that Maine and Carroll, as clerks of the defendants, demanded payment of Simon Levi of $3.00 due from him to the defendants, on certain leases of furniture, signed by Simon Levi, by which he agreed to allow the defendants or their agents or servants to enter upon any premises occupied by him, "and in case of forfeiture "to remove the same, without notice or demand, and without being deemed guilty of any trespass or wrong ; " that after some conversation with him, in which he told them he could not then pay it all, they told him that they were instructed to remove the furniture to the storehouse of the defendants, unless he paid it; that upon his neglect to pay, though not denying the sum claimed as due, they requested him to allow them to take the furniture, being the same described in the leases, and, upon his objection, Maine took hold of a glass then hanging in

the shop, whereupon the plaintiffs took hold of it and took it away from him; that then Maine (and Hanson by Maine's direction) went into a bedroom, the plaintiffs objecting, and took out a bed and spring and put it on a wagon, during which time Rachel Levi had carried the glass back into the kitchen; that Maine (and Hanson, under his direction) asked Simon Levi to open the door from the bedroom into the kitchen to allow them to take the glass; that, on his refusal, Hanson struck him a violent blow and knocked him down; that Maine and Carroll then went into the kitchen, and Maine struck the plaintiff, Rachel Levi, a violent blow in the breast, and Carroll kicked her in the abdomen, and that they then took the glass with the other goods, and went away. It was admitted that Maine and Carroll were in the general employment of the defendants as collecting clerks, and that they had been directed by the defendants to remove the furniture unless Simon Levi should pay the balance due on it under the leases. It appeared that Hanson was a teamster and went to the house of the plaintiffs at the request of Maine on that morning; that he had before done teaming for the defendants, as a job teamster. The plaintiffs also admitted that a balance of $3.00 was due from Simon Levi to the defendants, on the furniture, but offered evidence tending to show that it was all due on account of the spring bed; and that he had paid in full for the glass. The defendants contended and offered evidence tending to show that part of the $3.00 was due on or for the glass, and that Maine and Carroll went there and removed he goods because Simon Levi neglected and refused, after repeated demands on their part and promises on his part, to pay it.

The defendants offered evidence tending to show that no assaults or trespasses were committed by Maine, Carroll or Hanson, and offered to put in and use the leases for the purpose of showing the facts, conditions and circumstances under which Maine and Carroll went there, and in explanation and justification of the removal by Maine and Carroll of the furniture, and in defence of the action generally, but the judge refused to allow them to be used or to go to the jury as evidence of or for the purpose of any justification, because not set up in the answers, but admitted them for the other purposes, to which ruling the defendants excepted. There was no evidence of any other order,

employment or direction from the defendants to Maine, Carroll or Hanson, in respect to the removal of the furniture from the house or shop of the plaintiffs, except that given to Maine to get payment of the balance of $3.00 due, or remove the furniture, and that the goods were brought back to the defendants' store by Maine, Carroll and Hanson, and the defendant Brooks was at the store at the time they were so brought back.

The defendants then asked the judge for the following rulings: " 1. That if any balance remained due to the defendants on March 17, they had the right to use force necessary to remove the furniture. 2. That the direction to Maine, to collect the balance due on the furniture or remove it, did not imply or include assaults to or upon the persons of the plaintiffs or either of them; and if Maine made such assault, these defendants are not liable for it by reason merely of such direction or employment. 3. That if Hanson, the teamster, was not in the general employment or service of the defendants, but went to the plaintiffs' shop at the request of Maine only, and had no direction or authority to remove the furniture, or do any acts there, except by the authority or direction of Maine, the defendants are not liable for any illegal acts or assaults or trespasses committed by him. 4. That the defendants are not liable, upon all the evidence in the case, for any of the alleged assaults. 5. That in the order or direction to Maine to remove the furniture, if the amount due on it was not paid, the defendants are liable only for the natural, usual, ordinary or probable consequences of such order in its execution, and are not liable for everything which he might possibly do, or see fit to do, in executing such order. 6. That the alleged acts of striking or kicking Rachel Levi were not among the usual, ordinary, necessary or probable consequences of such order or its execution. 7. That it should not be left to the jury to say whether the alleged acts of striking or kicking Rachel Levi were done, or at the time thereof supposed by Maine or Carroll to be done, as a means of or necessary to be done to carry out or execute the order to remove the furniture, but the judge should rule that said alleged acts were not contained or implied in such order or direction. 8. That such alleged acts of kicking or striking Rachel Levi by Carroll or Maine or Hanson, were not within the scope of the employment of Maine to remove

the furniture, and the defendants are not liable for such acts if committed."

But the judge instructed the jury that if they found, upon the evidence, upon the preponderance of proof, the burden being upon the plaintiffs, that Maine, Carroll or Hanson struck or kicked the plaintiffs, or either of them, or used any force or violence upon the person of either of them, against the will of the person so kicked or struck, it was an assault; and if they gave such kick or blows, or made any such assault in the execution of the order or authority of the defendants for the removal of the furniture, whether wantonly or negligently, if done for the purpose of carrying out the said order of the defendants, the defendants would be liable. That if the acts were done in the execution of the authority given by the master, and for the purpose of performing what he had directed, he was responsible, whether the wrong done was occasioned by negligence or by a wanton and reckless purpose to accomplish his business in an unlawful manner. But if the acts of violence, if any, were done by said Maine, Carroll or Hanson, for some private end or advantage of their own, to satisfy some personal spite or revenge, the defendants would not be liable.

The judge made no distinction between acts of violence done by Hanson and those done by Carroll and Maine, or between any of those acts to or upon Simon Levi, from those upon Rachel Levi, as to the defendants' liabilities.

The jury returned verdicts for the plaintiffs; and the defendants alleged exceptions.

*J. B. Richardson*, for the defendants. 1. This case is one of wilful trespass, and is thereby distinguished from *Howe* v. *Newmarch*, 12 Allen, 49, which was a case of negligence. *Savignac* v. *Roome*, 6 T. R. 125. *M'Manus* v. *Crickett*, 1 East, 106. *Morley* v. *Gaisford*, 2 H. Bl. 442. *Degg* v. *Midland Railway*, 1 H. & N. 773. *Gordon* v. *Rolt*, 4 Exch. 365. *Freeman* v. *Rosher*, 13 Q. B. 780. *Wilson* v. *Rankin*, 6 B. & S. 208, 216. *Lyons* v. *Martin*, 8 A. & E. 512. *Green* v. *Macnamara*, 8 C. B. (N. S.) 880. *Wright* v. *Wilcox*, 19 Wend. 343. *Fraser* v. *Freeman*, 43 N. Y. 566. *Mali* v. *Lord*, 39 N. Y. 381.

2. Hanson was not the servant of the defendants, and they are not liable for his acts.

3. The leases should have been admitted in justification. An assault is an unjustifiable use of force, and whatever justifies the use of force goes to show that there is no assault.

*D. F. Fitz,* for the plaintiffs.

MORTON, J. The instructions given at the trial were in ac · cordance with the decision of this court in *Howe* v. *Newmarch,* 12 Allen, 49. The evidence tended to show that three persons, who were servants of the defendants, committed an assault upon each of the plaintiffs, and that such assaults were committed in the execution of the authority given them by the defendants, and for the purpose and as a means of carrying out their orders.

The ground taken by the defendants, that the master is not liable for a wilful trespass committed by the servant, cannot be sustained. The test of the liability of the master is, that the act of the servant is done in the course of doing the master's work, and for the purpose of accomplishing it. If so done it is the act of the master, and he is responsible " whether the wrong done be occasioned by negligence, or by a wanton and reckless purpose to accomplish the master's business in an unlawful manner." *Howe* y. *Newmarch, ubi supra,* and cases cited. *Barden* v. *Felch,* 109 Mass. 154. *Hawes* v. *Knowles,* 114 Mass. 518.

The court properly submitted the case to the jury under instructions to which there is no ground of exception.

The court also rightly ruled that the defence of a justification was not open to the defendants under their answer, it being merely a general denial. *Snow* v. *Chatfield,* 11 Gray, 12.

*Exceptions overruled.*