Ward v. Young.

---

## WARD v. YOUNG.

1. MASTER AND SERVANT: *Master's liability for servant's torts.*

The master's liability for the torts of the servant springs out of the relation itself, and does not depend upon the stipulations of their contract.

2. SAME: *Same: Keeper of penitentiary and convict.*

When the keeper of the penitentiary places a trusted convict in charge of his premises to protect them from trespassers, the relation of master and servant exists between them, and the master is liable for an unlawful injury inflicted there by the servant, in the scope of his employment, upon the person of another, notwithstanding it may have been done contrary to the express orders of the master.

3. EVIDENCE: *Party contradicting his own witness.*

A party may contradict his own witness by proof of his statements different from his testimony.

4. SAME: *Relevant: What is.*

Relevant testimony is that which conduces to the proof of a hypothesis, which, if sustained, would logically influence the issue. Hence, it is relevant to put in evidence any circumstance which tends to make the proposition at issue either more or less improbable.

APPEAL from *Pulaski* Circuit Court.
Hon. F. T. VAUGHAN, Circuit Judge.

*Clark & Williams* for appellant.

The relation of master and servant can not exist between the lessee of the penitentiary and a convict. A convict is not a servant in any legal sense. A servant must be an agent, and have discretionary power, which is inconsistent with his status as a prisoner. A convict is not the employé of the keeper. The rule *respondeat superior* can not apply. *Wood's Master and Servant, p. 4, sec. 4; Wait's Actions and Defenses, p. 307, secs. 1–2.*

The injury was not in the scope of the convict's agency. It was not done in pursuance of any employment. No one is bound to respond as master for the wrongs or outrages committed by a servant, unless he expressly commands them, or they were done within the scope of the purpose of his employment. *Wood Mas. and Serv., p. 534, sec. 277; Ib., 278–9; Ellis v. Turner, 8 T. R., 533; Wood Mas. and Serv., secs. 285–6.*

Admitting that a party may sometimes impeach his own witness, no party is at liberty to do so by contradicting him upon a fact collateral to the issue. (*Greenl. Ev., 462, and notes.*) Ward's statement that he *did not* put the convict there, and that he *did not* admit it to Young, were wholly immaterial and foreign to the issue.

There is an absolute want of testimony to show that the convict was put in the orchard with authority from any one to keep out trespassers; without such proof, there can

be no negligence on part of defendant. See *Wood M. and S., secs. 303–307; Shear. and Red. on Neg., sec. 63; 20 Conn., 284; 1 Wend., 273; 2 Thompson on Neg., p. 885, secs. 2–3; Wharton on Neg., sec. 168; 41 Iowa, 308; 109 Mass., 154.* These authorities show that the simple test is, whether the acts were done by the servant *within the scope* of his authority, not whether they were done while prosecuting the master's business. *But whether they were done by the servant in furtherance thereof, and were such as may fairly be said to have been authorized by him.*

The court erred in admitting testimony that Hawkins was seen with a gun, riding about the field, before and after the injury. It was immaterial and irrelevant, and calculated to excite predjudice against Ward.

It is always error to instruct the jury *that they are to say what facts have been proven.* The jury can only determine the weight of testimony, when there is testimony to weigh; whether there is such testimony, is a question of law.

*W. L. Terry* and *Blackwood & Williams* for appellee.

It was proper and right to contradict Ward's testimony, the necessary foundation having been laid. *Gantt's Digest, secs. 2523–5; Greenl. Ev., secs. 444–8–9.*

Proof that the convict was seen in the orchard with a gun, before and after the injury, was relevant, because it went to establish the fact, the main issue in the case, that the convict was a *trusty*, and was put there by Ward, or his representative, to keep out trespassers (*Wharton on Ev., vol. 1, secs. 20–21*), and made improbable the theory of the defense, that he was under guard, and not a *trusty*, etc.

A master is liable for the wrongful misconduct of his servant, *acting within the scope* of his employment, even though the *particular act* may not have been authorized, or

may have been contrary, even, to the master's orders. *Wood on Master and Servant, secs. 307, 590 ; 15 Ark., 126; Cooley on Torts, 538; Peck v. N. Y. C. R. R., 6 T, and C., N. Y., 436.*

It is not essential in order to constitute the relation of master and servant, *as to third persons,* that there should be *a contract* between the parties, or *any intention* on the part of either to create such relation. (*Wood Mas. and Serv., sec. 00, p. 10; Cooley on Torts, p. 532.*) The fact that Hawkins was a convict, and serving a term as a punishment, and was hired by Ward from the State, does not excuse Ward. The liability of the master does not depend upon circumstances with which the public has no concern. As to third persons, it matters not what the stipulations were, the master's liability springs from the *relation* itself. *Ib.*

The verdict is sustained by the evidence; is not excessive, and this court will not set it aside. This court has nothing to do with the truth or *weight* of the testimony. It was the province of the jury, properly instructed *as they were,* to draw their own *inferences of fact* and conclusions from the testimony before them. The court below heard the evidence as it *fell from the lips* of the witnesses, and refused to disturb the verdict. *22 Ark., 480 ; 103 Mass., 104; 34 Ark., 761.*

SMITH, J. The complaint alleges that Ward was lessee of the State penitentiary, and as such had charge of all the convicts, among whom was one John Hawkins, of an abandoned and malicious disposition. That on the twenty-sixth day of July, 1882, Ward permitted said convict to go at large as a "*trusty,*" without any guard. *That Ward made him his agent and servant, and placed him in charge of one of defendant's places, near plaintiff's residence, with orders to take care of his said place, including defendant's orchard thereon,*

35

*and mules; with orders, furthermore, to keep out all trespassers on said place, and to protect his orchard and mules, and to keep trespassers out of the orchard. That while controlling said place, and acting within the scope of his authority for that purpose,* plaintiff entered the said place, and went into defendant's orchard, which the said convict had in charge, to shoot some birds, as he lawfully might; and while he was in defendant's inclosure, the said convict, while in the performance of his duties, as aforesaid, without any provocation, wantonly and maliciously struck, beat and wounded plaintiff with a gun.

The answer denies that the defendant permitted Hawkins to go at large without guard, or placed him in charge of said premises, or gave him orders to protect the orchard or to keep out trespassers—denies in short, that Hawkins was at the time the defendant's agent or servant for any purpose, or, if he was, that said injury was inflicted within the scope of such agency; and avers that Hawkins was at the time herding the defendant's mules upon the pasture lands in the defendant's inclosure, and that he was within reach of the guns of the guards.

A trial was had and the jury rendered a verdict of $600 for the plaintiff, which the Circuit Court, upon a motion for new trial, refused to disturb.

The evidence tends to show that the plaintiff, a lad of thirteen years, in company with his mother, his sister and another lady, who was their guest for the day, were walking in the defendant's field upon a summer afternoon for recreation. This field lay between the residence of the Youngs and the public road. It had been sown in oats, but the crop had been taken off, leaving a stubble-field, which was used for pasturing Ward's mules. There was also an orchard in the field. Willie Young had taken his gun along to shoot birds. While

the party were in the orchard, Hawkins, a negro convict, sentenced to a term of twenty-one years in the penitentiary for a murder he had committed, rode up, mounted on one of Ward's mules, and began to swear at them and ordered them out. They told him they would go, only give them time and they would get out. Hawkins said that Ward did not allow people in the orchard, that he was directed to keep them out, and he was going to do it or shoot their heads off. Here Willie Young remarked that, if any shooting was to be done, he could shoot too. Whereupon, Hawkins snatched the gun out of the boy's hands and struck him over the head with it, felling him to the ground and inflicting a severe wound upon the right temple. No guards were in sight, and they could have been seen for the distance of three or four hundred yards. The plaintiff was led to his father's house, near by, and a surgeon called in to dress his wounds. Hawkins rode off, but soon returned with a breech-loading needle gun, such as the guards over the convicts are armed with. He had also been seen in that field on other days before and after the day of the assault with a gun in his hands.

Furr was overseer of the plantation where the injury took place, and had control of the convicts there, and put them at such work as he saw fit. He was half a mile away at the time and never learned of the assault until several days afterwards. He testified that he had placed Hawkins in the orchard-field to look after the mules, with directions to inform him if any negroes came there from Little Rock after fruit; but denied that he had given him a gun or instructions to keep people out of the orchard.

Upon this last point—whether any one representing the defendant had given authority to Hawkins to keep trespassers out of the orchard—there was a conflict of testi-

mony.    Ward was absent from the city at the time and his son, Will Ward, was managing the penitentiary. The latter denied that he had ever put Hawkins in charge of the orchard or the mules.    But the plaintiff's father was permitted, against objection, to state the substance of a conversation had, next day after the injury occurred, with Will Ward, involving an admission that Hawkins had been put there to keep out trespassers, but had no orders to beat or assault any one.    This was said, if at all, upon first receiving information of the affair, and without any knowledge of the circumstances, except as communicated by Young, and evidently with reference to what it was supposed Furr might have done.    Mrs. Young also gave evidence that in a subsequent interview, Furr had admitted he had put Hawkins in the field and had told him not to allow people to carry off the fruit.

Here follows the charge of the court :

" The plaintiff brings the action for personal injuries received at the hands of a person whom the plaintiff contends was the servant of defendant, and that said person, as such servant, committed the injury while in the scope of his employment.    The defendant does not deny that plaintiff was injured by the convict Hawkins, but denies that Hawkins at the time was his servant, acting within the scope of his authority, in such a way as to make him responsible.    This is the issue for you to try.

"The burden of proof is upon the plaintiff.    He must satisfy your minds by a preponderance of testimony, not only as to the extent of damage done, but also that the convict Hawkins was, at the time of the injury, the servant of the defendant, acting within the scope of his authority.    If the plaintiff has done this, either by proof or circumstances, he is entitled to a verdict.    If he has not done this you should find for defendant.

"As to what constitutes a servant, in the absence of express proof, depends upon the particular circumstances of each case. The mere fact that Ward was the lessee and Hawkins a convict, does not of itself constitute the relation of master and servant; nor that defendant merely let a convict go without a guard; nor, on the other hand, would it prevent the creation of such relationship.

"There are two things which must be established by proof or circumstances, before the plaintiff can recover:

"First—That Hawkins was the servant of Ward ; and

"Second—That as such servant he was acting within the scope of his authority.

"If you find, however, that Hawkins was the servant of defendant, and was acting within the scope of his authority, it is no justification of the act of the servant that he disobeyed the instructions of his master.

"You are the sole judges of the facts, and the evidence is with you. You are to say what facts have been proved, and apply the law as given you by the court. It is your duty to reconcile the testimony—if you can—but if you can not, then to credit this or that witness, who by reason of all the circumstances—his appearance on the stand— his interest in the cause—you think most worthy of belief. While you are the sole judges of the facts, it may not be improper to refer to the testimony of Will Ward. He was put on the stand by the plaintiff, and the plaintiff was permitted to contradict him by other testimony. This was done solely for the purpose of contradicting him. Also, as to the declarations of Hawkins at the time of the accident. His statement that Ward did not allow people in the field or orchard, and that he had authority to keep them out, is not evidence of such fact or such authority, and the jury must disregard such testimony for that purpose.

"In actions of this kind, smart-money or exemplary damages, are not recoverable ; only actual damages—medical expenses, loss of time, mental and physical suffering—should be allowed."

The defendant then asked three instructions, as follows :

"First—That this action can not be maintained unless the relationship of master and servant existed between the defendant, Col. Ward, and the convict Hawkins at the time of the injury, and this relationship does not exist merely by reason of the said Hawkins being a convict in the penitentiary, and Col. Ward being the keeper or lessee of the penitentiary ; nor did the fact of the convict being put to work at any kind of employment by Colonel Ward, or his overseer or agent, create such relationship.   To create the relationship of master and servant it must be proved that said defendant Ward by himself or overseer intrusted the said Hawkins with discretionary powers and duties independent and outside his duties and employment as a convict, and if the jury believe from the evidence that this relation of master and servant did not exist at the time, and in the employment in which the said Hawkins was engaged when the injury was inflicted, they will find for the defendant.

"Second—Notwithstanding the jury may find that the convict Hawkins was a servant of the defendant at the time of the supposed injury, unless they further find that said Hawkins, at the time of the alleged injury, was in the employ of said Ward as such servant, *with authority and direction to keep trespassers or persons from the orchard and grounds*, where it is charged such injury was inflicted, and that the injury was done in the performance of such duty, the jury will find for the defendant.

"Third—That the evidence of the plaintiff to the effect that William Ward stated to him that Hawkins, the con-

vict, who is alleged to have inflicted the injury, was given charge of the orchard or field in which the injury occurred, with authority to keep trespassers out of the same, is not evidence that said convict was in fact given or had any such authority, but evidence only to impeach the witness, Will Ward, by showing that he had made different statements."

The court gave the first two instructions, but refused the third, as demanded, but gave it with the following addition to the end thereof:

"But it is for the jury to say, under the proof and all the circumstances (independent of the statements of William Ward to Young), whether the convict was the servant of Ward at the time of the injury."

The verdict is certainly not without evidence to support it. It is, indeed, suggested that the relation of master and servant did not exist between Ward and Hawkins, and hence the rule *respondeat superior*, has no place. The process of reasoning by which ingenious counsel have reached this conclusion is, that Hawkins was a convict, undergoing his punishment for a crime; that the defendant, as keeper of the penitentiary, stood in the place of the State; that the Legislature had authorized him to work convicts at the place where Hawkins was, and in the manner in which he was engaged, at the time of the injury; and that the working of convicts, considered either as a mode of punishment or as a means of bearing the expenses of imprisonment, is an official act of the State Government. Hence it is argued that the convict could not be a servant, by reason of his status, so as to render Ward chargeable for his acts.

Now, although the relation of master and servant springs out of a contract, yet as to third persons it can make no difference that Ward hired the services of this convict from the State. The servant may be a minor and the con-

1. MASTER AND SERVANT.

Master's liability for torts of servant.

tract be with his parent. The master's liability, if any, arises from the relation itself, and does not depend on the nature of the stipulations in his contract. "If one is injured by the servant of another, and the injury is in any manner connected with the fact of service, it would be immaterial to the injured party what the contract of service was, how long it was to continue, what compensation was to be paid for it, or what mutual covenants the parties had for their own protection." *Cooley on Torts, p. 532; Wood's Master and Servant, secs. 4 and 7.*

Ward's right to direct and control the actions of Hawkins is the important circumstance. The particulars of the arrangement whereby he obtained that right are wholly unimportant.

2. SAME: Keeper of penitentiary and convict. The main issue of fact was, whether or not the convict, Hawkins, had been put in charge of the orchard for the purpose of excluding trespassers. That issue was fully and fairly submitted to the jury under instructions which stated the law correctly. And the jury had a right to infer, from all the facts and circumstances in evidence, that Hawkins was clothed with authority to protect the property. If this were so, then the act of Hawkins was, in law, the act of Ward, notwithstanding it may have been contrary to express orders. "Having employed the servant to protect his property, or to maintain his possession, he is liable for all the acts done in pursuance of such employment, and within the power implied therefrom, even though he expressly directed the servant what to do. Having set in motion the agency for producing mischief, he is bound at his peril to prevent mischievous consequences." *Wood's Master and Servant, sec. 309; Barden v. Felch, 109 Mass., 154; N. W. R. R. Co. v. Hack, 66 Ill., 238.*

"It is not necessary, in order to fix the master's liability, that the servant should, at the time of the injury, have

been acting under the master's orders or directions, or that the master should know that the servant was to do the *particular act* that produced the injury in question. It is enough, if the act was *within the scope* of his employment, and if so, the master is liable, even though the servant acted *willfully*, and in direct violation of his orders." *Sec. 307 Wood on Master and Servant.*

"It is in general sufficient to make the master responsible, that he gave to the servant an authority, or made it his duty to act *in respect to the business* in which he was engaged when the wrong was committed, and that the act complained of was done in the course of his employment."

\*        \*        \*        \*        \*        \*

"The master who puts the servant in a place of trust or responsibility, or commits to him the management of his business or the *care of his property*, is justly held responsible when the servant, through lack of judgment or discretion, or from *infirmity of temper*, or under the influence of *passion* aroused by the circumstances or the occasion, goes beyond the strict line of his duty or authority, and inflicts an unjustifiable injury upon another." *Cooley on Torts, page 538.*

It was also insisted that the court erred in admitting J. O. Young's testimony, to contradict the testimony of Will Ward, the plaintiff's own witness.

3. EVIDENCE Party contradicting his own witness.

Section 2523 of Gantt's Digest provides that "the party producing a witness is not allowed to impeach his credit by evidence of bad character, unless it is in a case in which it is indispensable that the party should produce him; but he may contradict him with other evidence, and by showing that he had made statements different from his present testimony."

The proper foundation was laid here by inquiring of the

Ward v. Young.

witness, whom it was proposed to contradict, concerning the previous statement, with the circumstances of time, etc. *Ib., sec. 2525.*

Relevant testimony. What is.    Another alleged error consisted of the admission of testimony that the convict, Hawkins, was seen in the same field with a gun in his hands, before the said Willie Young and other persons with him had entered the field, and after the injury had happened and they had left the field and premises of defendant.

One of the issues involved in the pleadings was whether or not Hawkins was a trusted convict and permitted to go without guards. The theory of the defense was that he was kept under guard and not permitted to go at large. If he had been allowed certain liberties and invested with a certain discretion on previous occasions immediately before or after this occurrence, these were circumstances tending to show that he had been trusted both before and since, and rendering improbable the story that at this particular time he was covered by the guns of his guards.

"Relevancy," says Mr. Wharton, in his book on evidence, volume 1, section 20, "is that which conduces to the proof of a pertinent hypothesis; a pertinent hypothesis being one which, if sustained, would logically influence the issue." "Hence," says he, in section 21, "it is *relevant* to put in evidence any circumstance which tends to make the proposition at issue either more or less improbable."

Affirmed.