JUANA SUÁREZ WIDOW OF ARROYO, Plaintiff and Appellant, *v.* MANUEL SAAVEDRA SOLER, Defendant and Appellee.

No. 7005.   Argued April 21, 1937.—Decided February 14, 1938.

*J. Veray Jr., Juan B. Soto, Juan F. Soto* and *E. Igaravídez,* for appellant.   *García Méndez & García Méndez* for appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the Court.

An employee of defendant in charge of a truck load of cane, threw a piece of cane at a group of school children, some of whom were taking or had been taking cane from the truck.   One of the group, a boy of fourteen years, was struck and died of his injuries.   The district judge sustained a motion for nonsuit and dismissed an action for damages.

The district judge cites 12 Manresa 595, 596, and *Stone* v. *Hills* (Conn.) 29 Am. Rep. 636 quoted with approval in *Marrero* v. *López,* 15 P.R.R. 747, 753.   He also distinguishes *Garretzen* v. *Duenckel* (Mo.) 11 A. R. 405; *Bittle* v. *Camden & Atlantic R. Co.* (N. J.) 55 N.J.L. 615, 23 L.R.A. 283; *Ploof* v. *Putnam,* 26 L.R.A. (N.S.) 251, and *Soderlund* v. *Chicago, Milwaukee & St. Paul Ry. Co.,* 13 L.R.A. 1193.

Authority to take charge of a truck load of cane "includes authority to take reasonable measures appropriate to the subject matter, to protect the subject matter against destruction or loss." Restatement of the Law of Agency, Vol. 1, 165, Section 69. In the same volume we find that:

"Where a servant is acting close to, although not within, the authorized place or time, or where the act is similar to one authorized, all the facts must be considered to determine responsibility for his conduct, both as bearing upon the question of whether or not his conduct is sufficiently near to that authorized to cause the master to be subject to liability, and upon the question of whether or not in absence of specific evidence of the purposes of the servant he has the purpose of acting within the employment." Page 506.

That:

"To be within the scope of the employment, conduct must be of the same general nature as that authorized, or incidental to the conduct authorized." Section 229, page 507.

That in this connection one of the matters to be considered is:

"The extent of departure from the normal method of accomplishing an authorized result." Section 229, page 507.

That another matter to be considered in this connection is "whether or not the act is seriously criminal." That "a master is responsible for authorized but unintended conduct." Sec. 229.

That:

"The ultimate question is whether or not it is just that the loss resulting from the servant's acts should be considered as one of the normal risks to be borne by the business in which the servant is employed." Section 229.

That an act in order to be incidental to an authorized act "must be one which is subordinate to or pertinent to an act which the servant is employed to perform. It must be within the ultimate objective of the principal and an act which it is not unlikely that a servant might do." Page 510.

That:

"The fact that a particular employer has no reason to expect the particular servant to perform the act is not conclusive." P. 510.

That:

"Although an act is a means of accomplishing an authorized result, it may be done in so outrageous or whimsical a manner that it is not within the scope of employment." P. 510.

That:

"An act may be within the scope of employment although consciously criminal or tortious." Section 231, page 516.

That:

"The fact that the servant intends a crime, especially if the crime is of some magnitude, is to be considered in determining whether or not the act is within the employment, since the master is not responsible for acts which are clearly inappropriated to or unforseeable in the accomplishment of the authorized result." Section 231.

That:

"A gardener using a small stick in an assault upon a trespassing child to exclude him from the premises may be found to be acting within the scope of the employment; if, however, the gardener were to shoot the child for the purpose, it would be very difficult to find the act within the scope of employment."

Section 231.
That:

"As in other cases, it is a matter of degree, the question being whether or not the conduct is so unlike that authorized that it is a substantially different thing." Section 231.

That:

"The fact that an act is done in an outrageous or abnormal manner has value in indicating that the servant is not actuated by an intent to perform the employer's business." P. 528.

That in order "to create liability for a battery by a servant upon a third person, the employment must be one

which is likely to bring the servant into conflict with others."
Section 245, page 547.

That:

"The liability of a master for the use of force by a servant is
not prevented by the fact that the servant acts in part because of
a personal motive, such as revenge." P. 550.

That:

"The fact that the servant acts in an outrageous manner or
inflicts a punishment out of all proportion to the necessities of his
master's business is evidence indicating that the servant has
departed from the scope of employment in performing the act."
P. 550.

At page 551, Section 245, we find the following examples:

"A is employed by P as the driver of an ice wagon. While A
is delivering ice, a number of children annoy him by endeavoring
to get pieces of ice. A throws a piece of ice at one of them in order
to expedite his work. The fact that he also hopes to cause pain to
the child and thereby get revenge for the annoyances, does not
prevent the act from being within the scope of employment."

"P employs A as switchman. A is often annoyed by boys who
invade his premises and interfere with his duties. In exasperation
he shoots a child four years old who is so doing. In view of the
child's age, A's act is so outrageous that it is not within the scope
of his employment and P is not liable because of it under the rule
stated in this section."

In *Doscher* v. *Superior Fire Proof Door & Sash Co.*
(N. Y.) 221 App. Div. 63, a motor vehicle driver attempting
to frighten boys from hitching by throwing an iron bar,
causing injury, was held to have been acting within the scope
of his employment. In *Zerngis* v. *Hood & Sons,* 152 N. E.
50, the Supreme Court of Massachusetts said:

"The plaintiff, a child 14 years of age, was injured in the head
by a piece of ice thrown by one Gillespie, an employee of the defend-
ant. A car, loaded with ice or ice and milk, belonging to the
defendant, was standing near its place of business about 50 feet
from Massachusetts Avenue, in Cambridge. It was the practice of

the defendant to have a carload of ice at this place on summer nights and every night children were near it picking up ice. On the night in question there were about 36 children there. 'This crowd of children . . . . . interfering with the employee of the Hood Company' was right side of the car. Gillespie, who was admitted to be in the general employ of the defendant, jumped or stepped out of the car, reached down, picked up a piece of ice about one-half as large as a brick, and threw it, hitting the plaintiff, who was then on the tracks at a distance estimated to be 100 feet or more away. There was no evidence that the plaintiff was one of the children picking up ice near the car. From the admission that Gillespie was in the general employ of the defendant, together with evidence that he was in the car of the defendant containing its property, that a large number of children were closed to the car and picking up the defendant's ice, and that the crowd of children was interferring with the defendant's employee, the jury could have found that Gillespie was trying to drive the children away and was doing this in the course of his employer's work and for the purpose of accomplishing it. 'For such an act the employer is 'responsible, whether the wrong be occasioned by negligence, or by a wanton or reckless purpose to accomplish the master's business in an unlawful manner.' *Howe v. Newmarch*, 12 Allen 49, 57; *Levi v. Brooks*, 121 Mass. 501; *Coughlin v. Rosen* 220 Mass. 220, 223, 107 N. E. 914. The case comes within the principle stated in *Robinson v. Doe*, 224 Mass. 319, 320, 112 N. E. 1007, and in *Coughlin v. Rosen*, supra.''

The case at bar on its merits—that is to say, if we are to weigh the evidence for and against the theory that the employee was acting within the scope of his authority—is a border case. From the defendant's standpoint it may be argued that the employee threw the piece of cane with murderous intent directly at the boy who was struck and that his conduct was so outrageous as to relieve his employer from responsibility. On the other hand, it seems to us a more reasonable inference, from all the testimony, that he threw the piece of cane at the group for the purpose—not unmixed with anger, malice and a desire for revenge—of deterring certain members thereof from further depredations. Upon this hypothesis, the fact that he acted with

malice, in anger or from any other reprehensible motive short of a deliberate intent to kill, would not, as we have shown, relieve the employer from all responsibility. The district judge in passing upon the motion for nonsuit, however, was not required to weigh the evidence with the same degree of care that he would exercise in deciding the case on its merits.

In *Rosado* v. *Ponce Ry. Light Co.*, 18 P.R.R. 593, 615, this Court said:

"Sustaining a motion for a nonsuit is like rendering judgment on a demurrer, it being in reality a demurrer to the evidence. Motions for nonsuit should be considered with great caution and only granted in the clearest cases. But there is nothing in the record to inform us that all the evidence introduced by the plaintiff was not taken by the court as true, though it may be the fact, and doubtless is, that different inferences were drawn from it than those deduced by plaintiff's counsel. It was not incumbent on the court to give to the plaintiff's evidence the greatest possible weight; but it must be estimated fairly to both sides, as should be done in all cases, and at all stages of the proceedings."

In *Tous Soto* v. *Chevremont*, 31 P.R.R. 363, we followed the doctrine of the Rosado case.

In *González* v. *González*, 30 P.R.R. 765, 767, we said:

"While the proof was not very strong, it was sufficient to prevent a judgment of nonsuit. On a motion for nonsuit the court does not weigh the evidence, but decides whether there is any evidence to suport the complaint."

In *Feliú* v. *Independence Indemnity Co.*, 43 P.R.R. 217, the rule was restated as follows:

"No one questions in this case, in accordance with the decision in *Calcerrada* v. *American Railroad Co.*, 35 P.R.R. 801, that it is not the duty of the court to weigh the evidence but as a general rule merely to decide whether there is sufficient proof to support the complaint. Some decisions question whether a court on such a motion might not disregard certain evidence that was trivial or which it did not believe, but this question is not involved in this appeal."

In the insular courts there are no jury trials in civil cases. A district judge, in passing upon a motion for nonsuit, is not precluded from drawing reasonable and proper inferences from the evidence. *Rosado* v. *Ponce Ry. Light Co. supra.* In drawing such inferences, however, he should bear in mind that, as pointed out in the Rosado case "motions for nonsuit should be considered with great caution and only granted in the clearest cases." He should also, of course, be under no misapprehension as to the law applicable to the facts before him. If, in the instant case, it were clear that there was no mistake of law or of fact and that the result would have been the same if the motion for nonsuit had been overruled, there would be no reason for a reversal.

The theory of defendant's motion was that a principal is responsible only for negligent or careless conduct of his agent, not for any criminal act committed by such agent. That is not the law.

The district judge did not definitely adopt defendant's theory of the law. His reasoning was largely in line with the true test. Nevertheless, his conclusion and the result might have been different but for the influence of defendant's theory. An overruling of the motion for nonsuit, of course, does not preclude further consideration of the evidence by the district court in the light of the trend indicated by the more recent cases as shown by the extracts, *supra.*

The ruling and judgment of the district court must be reversed. The motion for nonsuit will be overruled and the case remanded for further proceedings not inconsistent herewith.

Mr. Justice Wolf dissented.

Mr. Justice Córdova Dávila took no part in the decision of this case.