PLUMLEE v. ST. LOUIS SOUTHWESTERN RAILWAY COMPANY.

## Opinion delivered February 17, 1898.

1. APPEAL—WAIVER OF EXCEPTIONS.—Error of the trial court in giving instructions is waived by a failure to save exceptions thereto. (Page 495.)

2. NEW TRIAL—SURPRISE.—The doctrine of surprise as a ground for new trial does not apply to the testimony of witnesses of the opposite party, nor to evidence introduced by such party where the same tends to support the issues joined, and is such as might reasonably have been anticipated. (Page 495.)

3. SAME—SURPRISE.—It is not a ground of surprise at a second trial of a case that defendant produced witnesses who were not present and did not testify at the former trial. (Page 496.)

4. SAME—NEWLY DISCOVERED EVIDENCE.—Newly discovered evidence that goes only to impeach the credit of a witness is not ground for a new trial. (Page 496.)

5. WITNESS—RIGHT TO ASK LEADING QUESTIONS.—It is within the discretion of the trial court to permit or not to permit a party to ask his own witness leading questions. (Page 496.)

6. EVIDENCE—MATTER OF OPINION.—Where the condition of a certain hand car was material, it was not error to refuse to permit the witness to state generally that the car was in bad condition where the facts upon which their opinion as to its condition was based could have been adequately described to the jury by the witnesses without expressing their opinions. (Page 496.)

7. SAME—FORMER TESTIMONY OF PRESENT WITNESS.—It was not error to refuse to permit a party to read the former testimony of a present witness as independent testimony, and not merely to refresh the recollection of such witness. (Page 497.)

Appeal from Monroe Circuit Court; *Eugene Lankford*, Judge; affirmed.

### STATEMENT BY THE COURT.

This action was commenced on October 20, 1903, and it was alleged that the plaintiff's intestate was killed April 28, 1902, while in the service of the defendant as a section hand, by reason of a derailment of a handcar. It is alleged that the handcar was defective and unfit for use.

The defendant admitted that the plaintiff's intestate was killed at the time alleged, but denied that he was killed on account of the negligence of it, or its employees, or on account of a defective handcar or track, and averred that the inquiry re-

sulted from the negligence of the deceased and his co-employees.

This is the second appeal in this case. Reference is made to the former opinion, reported in 78 Ark. 147, for a more detailed statement of the facts.

### MOTION FOR NEW TRIAL.

Plaintiff filed a motion for new trial as follows:

"1.  The verdict is contrary to law.

"2.  The verdict is contrary to the evidence herein.

"3.  The verdict is contrary to the law and the evidence.

"4.  The court erred in modifying the third instruction as asked for by plaintiff.

"5.  The court erred in giving the 10th instruction for defendant, which is written on Manila paper, 'Cite 56 Ark. 206 at the top,' as said instruction was confusing.

"6.  The plaintiff was taken by surprise by the evidence of one Watkins, the section foreman, that said section foreman had been sued jointly with the other defendants herein, and summons had been issued from the circuit clerk of this county to the sheriffs of the following counties: Clay, Green, Craighead, Jefferson, Ouachita, and Miller, but said sheriffs failed to find said Watkins at the former trial, or at this trial.

"7.  The defendant was surprised by the testimony of any and all witnesses for the defense, especially Ed Roland and one Peel, who said the car was running at the rate of 15 miles an hour, and the said Ed Roland and all other witnesses at the former trial testified that said car was not running over 8 or 10 miles an hour, as the records in the former trial, and with the transcript to the Supreme Court fully show, which former testimony plaintiff asks to be considered, and he here introduces transcript in this case in evidence upon this motion.

"8.  He states that said Ed Roland also testified at the former trial in regard to the wheels being fastened to the front axle said as follows: Question. 'How were the front wheels fastened to the axle, the front wheels the way they were going?' Answer. 'Why, they had some play, they were cog wheels, and they have to have some play in order to run the car.'

"9.  They were taken by surprise by the testimony of one Peel, who was never introduced as a witness before, and who

testified that said car was running at the rate of 15 miles an hour. But said Peel had stated to other parties, as plaintiff has learned since the trial herein, that said car was not running at the rate of over 8 or 10 miles an hour, and at other times he states that he had no idea at all what rate of speed the car was running.

"10. They state as to the testimony of one Huddleston, who claimed to be special section foreman of that section in March prior to the accident, that said testimony was misleading, and said witness had never been summoned before in this case.

"11. Plaintiff states that he did not know that said Watkins had come back into this country, as it was admitted that he had been living in Kansas ever since the summer after the injury. That the plaintiff, the administrator herein, nor the plaintiff's attorney did not know said Watkins was in attendance as a witness until after the trial had begun, and then neither knew him when they saw him. That said Watkins testified that the car was in good condition in every way, and that there were no defects in any way, which was not only a surprise to the plaintiff, but which was false. That immediately after the trial was over the plaintiff had a talk himself with the said Watkins in the courthouse yard in which conversation he asked said Watkins why he, said Watkins, changed the trucks on the car that caused the injury soon after the accident, to which said Watkins answered, 'That when he went to Keeville there was *an old worn out* handcar lying on the platform at Keeville; that he did not know how long it had been there. That Mr. Barnett, the roadmaster, told him that he might use any part of the old worn out car for any purpose he saw proper. That he took the pair of trucks off of this old worn out car, and put it on the new car, and then framed up the old car and sent it in to the company. His reason for changing was because one of the axles on the car he was using was sprung.' This is shown by the affidavit of the plaintiff herein.

"12. That, on the night on which A. J. Hopkins lay a corpse at Keeville, said Watkins came down to the house where the neighbors were sitting up with said corpse; that said Watkins expressed his sorrow at the said accident, and told one Kelly 'That he had condemned *this* car sometime prior to the injury

and had made requisition on the company for another car, but they had failed to send him one.' This is shown by the affidavit of said Kelly.

"13. He says that the testimony of Ed Roland at the former trial and the testimony at the present trial were conflicting in most all material matters, and that he here introduces the records in the former trial, that is, the transcript of the Supreme Court in this case, and asks that it be considered on the hearing of this motion, and considered a part of the record herein.

"14. That the measures made by W. A. Brady, the claim agent, where the car is supposed to have left the track are mere speculations and misleading to the jury. That the defense changed its theory entirely by their expert testimony as shown by the records introduced herein. They contended then the car was derailed before by reason of the light load, and that 6 to 10 men was an ordinary load. This theory they abandoned. The defense admitted that 15 miles an hour was safe speed, and at the present trial did not admit that 15 miles an hour was safe speed, but was more or less dangerous. The two experts, Huddleston and Davis, varied fatally as to the distance the car would run after leaving the track, when running at the rate of 8 or 10 miles an hour, or 15 to 20 miles an hour.

"15. One expert claimed that, if running over 15 miles an hour, the car would turn to one side at once and would not go any distance up the track. The other expert stated that if the car went 32 feet it was running more than 15 miles an hour. That such testimony was misleading and confusing to the jury. Plaintiff introduces former record here to show that defendants have changed its testimony and theory as to why the car left the track, and the conflict in the evidence of said expert.

"16. Plaintiff was taken by surprise by the evidence of said Watkins, the section foreman, of Huddleston and Peel, who had never been introduced before, and plaintiff did not know that they were witnesses until after the trial began.

"17. They state that they did not know until since the trial that they could prove by Kelly that Watkins had condemned the car prior to the injury, nor could they have learned same by any reasonable diligence.

"18. Plaintiff states that they asked time to get proper testimony to show that Ed Roland's statements, and the other witnesses in this case were incorrect, as the records in the case show.

"19. They state that the evidence as shown by J. H. Plumlee's affidavit and Kelly's affidavit was newly discovered evidence since the trial herein.

"20 Plaintiff files the affidavit of J. D. Hood, which shows that said car was defective at the time of the injury, which testimony the plaintiff has learned since the trial herein.

"21. They file the affidavit of G. B. Fuller, which shows that Ed Roland swore the day of the coroner's inquest that the car was not running over 8 or 10 miles an hour. That the car was out of repair, and should have been burned up long before the injury. Also that there was a low joint at the place the car left the track of three-quarters of an inch.

"22. They ask leave to file the affidavits of other parties, showing that Ed Roland and Watkins, the section foreman, both knew that the car was out of repair prior to the injury, and that the section foreman had condemned the car prior to the injury. They may desire to introduce some witnesses before the court on the hearing of this motion."

A few days later plaintiff filed additional grounds for a new trial and affidavit of S. R. Hicks which are as follows:

"I, S. R. Hicks, state on oath that I lived in Keeville community for the last 17 years, and I know the time that Jack Hopkins was killed. I was on the same section that Hopkins was killed on before and after his death. I began work about 20 or 30 days after his death on that section, but I lived there at that time. I heard Mr. Watkins say that this car was not safe, and told us not to run it fast. He said that he had ordered another car, but it had not come. This car jumped the track, or 'fell in,' as we term it. I have worked about 3 years as section hand. When it fell in, Mr. Watkins was on it. I remember that Mr. Watkins changed the trucks—that is one of the trucks—soon after the injury. I mean the car that Hopkins was killed on. The trucks that he put on this car came off of an old 'worn out' push car that had been lying on the platform at Keeville a long time. When the injury occurred, the car

had axles of different makes. One wheel on that car had a flat place, and is called 'flat wheel,' and it popped like a board. I never was summoned in this case, and I never told Mr. Parker what I knew. Ed Roland cautioned me one day while I was running this car, and said, 'You boys are going to get just what Hopkins got.' I am 36 years old. One reason that I quit the section was I was afraid of the car."

ADDITIONAL GROUNDS FOR MOTION FOR NEW TRIAL.

"1. That Ed Roland soon after the injury herein told S. R. Hicks, that the car on which Hopkins was killed was 'unsafe' which is shown by the affidavit of said Hicks, filed herein, and that plaintiff never knew of said testimony until after trial, and no amount of diligence would have obtained same.

"2. Also that said Watkins stated to said Hicks that said car was 'unsafe.' That Watkins was on said car when the cogs slipped and caused the car to derail. Said Hicks also knew when the trucks were changed just after the injury and a pair of old worn out trucks put on, which trucks came off of a push car. He also knew that the axle of this car was sprung.

"3. That he files the affidavit of J. N. O'Hare which supports that of Hicks. That the evidence of J. D. Hicks, Fuller, Elias Kelly, S. R. Hicks and J. N. O'Hare, and the admission of Watkins to the plaintiff, are all newly discovered evidence since the trial herein, and that no diligence would have developed same prior to trial.

"4. Court erred in not allowing plaintiff to refresh witness O'Rear's mind by reading his former statement.

"5. Court erred in excluding from jury message from Peck, superintendent, about removing tree, as stated by witness Thompson.

"6. Court would not permit plaintiff to ask defendant's witnesses 'if they would swear'—thus, and allowed defendant's to ask plaintiff's witnesses similar questions.

"7 Court erred in not allowing plaintiff to lead witness Thompson on re-examination on new matter. Also to ask Thompson if the defects he named would not derail a car running, at the rate of 8 or 10 miles per hour. The court erred in excluding testimony of Mr. Morgan about 'play on the

wheels on axles—boxing being loose—bed loose—frame loose —and that he would not sign Brady's statement.'

"8.  Court erred in excluding questions and answers of McCay about Hopkins being present or not being present, when defects were discussed.

"9.  Erred in allowing defendant to prove use of car after injury, or accident, in going to Clarendon and Brinkley and in other manner, and not allowing plaintiff to show bad condition after accident.

"10.  Court erred in allowing different statements to be read to the jury as evidence.  That whole trial was unfair to plaintiff.

"Court erred in allowing or giving any new instructions, as the law in this case had been settled."

The court overruled both motions for new trial, and plaintiff has appealed.

*H. A. Parker,* for appellant.

1.  Appellant was entitled to have the witness O'Rear refresh his memory by his former testimony, and the court erred in denying appellant that privilege.  16 Ark. 568; 59 Ark. 251; 72 Ark. 354; 68 Ark. 225.

2.  Appellee's witnesses having in all material matters changed their testimony from that given by them at the former trial, which could not have been anticipated, appellant ought to have been permitted to contradict them by their former testimony.  66 Ark. 612.

3.  While as a rule no evidence can be introduced to show changes, alterations, repairs or additional safeguards after the occurrence of an accident, for the purpose of showing negligence, yet there are well defined exceptions to that rule.  109 Ia. 219; 96 Mich. 549; 56 Conn. 44; 124 N. C. 184; 37 So. 825.  Where there is testimony to show that the structure or thing in which or because of which accident occurred was in good repair, it is competent to prove that repairs were made after the accident.  37 So. 784; 13 Ia. 649; 76 Ia. 67; 22 Ind. App. 10; 55 Kan. 250; 82 Ga. 579; 53 Mich. 607; 13 Hun, (N. Y.) 254.

4. It was error to permit appellee to prove the use and condition of the car after the accident and deny appellant the right to introduce proof counter thereto. 1 Wigmore, Ev., 46; *Id.* 45; 44 Ia. 284; 47 Ia. 217; 66 Ia. 405. Objections to testimony is waived by the introduction of similar testimony. 1 Wigmore on Ev. 61-2; 3 Enc. of Ev. 183-4.

*Sam'l H. West* and *J. C. Hawthorne,* for appellee.

1. The question of negligence was fairly submitted to the jury, and their verdict disposes of the first, second and third assignments of error. And no exceptions were saved to the instructions.

2. The fact that certain witnesses are produced on a second trial who were not produced at the first forms no basis for the claim of surprise. There is no rule of law requiring either party to use the same witnesses at both trials. A new trial will not be granted on account of surprise or newly discovered evidence which tends to impeach witnesses, or is cumulative. 17 Ark. 404; 73 Ark. 377; 66 Ark. 523.

HART, J., (after stating the facts.) 1. No exceptions were saved to the instructions of the court, and therefore, by a familiar rule of practice, error, if any occurred, was waived. *Ray* v. *Light,* 34 Ark. 421. There was sufficient testimony to support the verdict of the jury. This disposes of the first five assignments of error.

2. The 6th, 7th, 9th, 10th, 11th, 13th, and 16th assignments of error are not well taken.

"The general rule is that the doctrine of surprise does not apply to the testimony of witnesses of the opposite party, nor to evidence introduced by such party, where the same tends to support the issues joined, and such as might reasonably have been anticipated." *Petty* v. *State,* 76 Ark. 519. The ground of surprise by the evidence of Watkins, Peel and Huddleston seems to consist in the fact that their evidence tended to contradict the evidence of the plaintiff's witnesses. This might have been reasonably expected. True, these witnesses were not present and did not testify at the former trial. But there is no rule of law to confine parties to the same witnesses and to the same testimony on the second as on the first trial. All that is required

is that the testimony be confined to issues raised by the pleadings, and that was done in this case.

3. The surprise in the testimony of Ed Roland consists in the contention that there was a difference in the testimony in the two trials as to the speed of the handcar at the time of the accident. The only purpose of the newly discovered evidence was to impeach his credit as a witness, and this has been repeatedly held not to be a ground for a new trial in such cases. *Minkwitz* v. *Steen*, 36 Ark. 260; *James* v. *State*, 72 Ark. 404, and cases cited.

4. Error is assigned because the court did not allow plaintiff to lead the witness, Thompson, and because the testimony of Morgan, mentioned in 7th assignment, was excluded from the jury. An inspection of the record shows that the plaintiff was examining the witness Morgan by asking him leading questions, and the court only stopped that form of examining the witness. It is within the discretion of the trial court to permit or not to permit a party to ask his own witness leading questions. *Wallace* v. *Bernheim*, 63 Ark. 108; *Scott* v. *State*, 75 Ark. 142. We do not think the court abused its discretion in that regard.

5. Error is assigned because the court did not permit the witnesses to state generally that the car was in bad condition. The record shows that this was excluded as being the opinion of the witnesses. Hence the ruling of the court was correct, for the facts upon which the opinion was based could have been adequately described to the jury by the witnesses without expressing their opinions. *Continental Casualty Co.* v. *Todd*, 82 Ark. 215; *Tiffin* v. *St. Louis, I. M. & Sou. Ry. Co.*, 78 Ark. 55; *Railway Co.* v. *Yarborough*, 56 Ark. 612. The record shows that the court permitted the witnesses to fully describe the condition of the car, and only excluded general statements which merely amounted to an expression of opinion.

6. It is contended that the court erred in not allowing plaintiff to refresh witness O'Rear's mind by reading his former statement. The record on this point is as follows: "Question by the court: You say Mr. Parker read that evidence over to you when? A. He read it over to me yesterday evening. Mr. Parker, plaintiff's counsel, (resuming): Question. In reading it over yesterday, you admitted what was read to be

true, didn't you? Defense objects to the manner of questioning the witness. Plaintiff asks permission to read to the jury witness' testimony in the former trial. Objected to by the defense." The court was right in not allowing the testimony of the witness taken at a former trial to be read to the jury, the witness being present at the trial. *Railway Co. v. Sweet,* 60 Ark. 550. It can not be claimed that it was offered to refresh the recollection of the witness; for the whole of his testimony taken at the former trial was asked to be read to the jury. This was asking it to be considered as independent testimony. *Phoenix Ins. Co. v. Public Parks Amusement Co.,* 63 Ark. 187.

At a subsequent term of the court, appellant filed a petition for a rehearing, but substantially the same grounds are alleged as are given in the two motions for a new trial filed at the term of the court at which the case was tried. The main contention of appellant for a new trial is his surprise at the appearance of Watkins at the trial, and the contradictions to his testimony discovered after the trial. Watkins's testimony was directed to the issue joined by the pleadings, and was but cumulative of the testimony adduced by the defendant at the first trial, and the newly discovered testimony only goes to the impeachment of his credibility as a witness. Watkins's testimony being merely cumulative of the testimony adduced at the first trial, the motion for a new trial does not come within the rule announced in *Mutual Life Ins. Co. v. Parrish,* 66 Ark. 612.

Judgment affirmed.