COULTER *v.* STATE.

Opinion delivered November 17, 1913.

1.  INSTRUCTIONS—SPECIFIC OBJECTIONS.—Where the instructions given by the court on the question of self-defense properly state the law of the case, defendant should object specifically to another instruction given on the same point, which he claims was objectionable.   (Page 211.)

2.  ASSAULT WITH INTENT TO KILL—CRIMINAL INTENT—INSTRUCTIONS. —Where defendant, in a prosecution for homicide, testified that he drew his pistol and shot the prosecuting witness with intent to kill him, because he thought his own life was in danger, an instruction given by the court, that " * * * every sane man is presumed to intend the natural and probable consequences of his acts," is erroneous, but not prejudicial.   (Page 212.)

3.  ASSAULT WITH INTENT TO KILL—SELF-DEFENSE.—Where the evidence showed that defendant had a pistol in his hand and the prosecuting witness had started away, but, after a remark by defendant, turned, and defendant then shot him, an instruction that a plea of self-defense would be unavailing if, after defendant drew his pistol, he could reasonably have prevented an injury without shooting, and that such fact was apparent to him at the time, is proper.   (Page 213.)

4.  INSTRUCTIONS—POINTS ALREADY COVERED.—It is not error to refuse to give a requested instruction, when the law therein contained is sufficiently set out in other instructions which the court has given.   (Page 213.)

5.  CRIMINAL LAW—ASSAULT WITH INTENT TO KILL—LESSER CRIME.— While mere words, however opprobrious, will not justify an assault with intent to kill, yet words, accompanied by acts of a violent or threatening character, would be a provocation that might reduce the crime from assault with intent to kill to aggravated assault, or to a justification of an aggravated assault.   (Page 214.)

6.  TRIAL—REMARKS OF TRIAL JUDGE—PREJUDICE.—The trial judge may, by proper instructions, remove prejudice occasioned by his remark as to a former conviction of defendant of a crime.   (Page 215.)

Appeal from Sevier Circuit Court; *Jeff T. Cowling,* Judge; affirmed.

*James S. Steel, J. S. Lake* and *James D. Head,* for appellant.

*Wm. L. Moose,* Attorney General, and *Jno. P. Streepey,* Assistant, for appellee.

Hart, J.   The defendant, Jim Coulter, was indicted for the crime of assault with intent to kill, charged to have been committed by shooting Cal Rollins. He was convicted, and his punishment fixed by the jury at one year in the penitentiary. From the judgment of conviction, he has duly prosecuted an appeal to this court. The facts, so far as they are material for a consideration of the issues raised by the appeal, are substantially as follows:

On the 31st day of August, 1912, the defendant, Jim Coulter, and the prosecuting witness, Cal Rollins, and his brothers, Al and Dural Rollins, attended a negro picnic in Sevier County, Arkansas. Cal Rollins arrived there about noon, and his two brothers and the defendant were already there. During the morning, some trouble occurred between Al and Dural Rollins, and the defendant, Jim Coulter. Later in the afternoon, some words again passed between Al Rollins and the defendant. The defendant placed his hand in his bosom and Al Rollins started off. About this time, Cal Rollins came up. Dural Rollins was also present. Some words passed between Cal Rollins and the defendant, and the defendant said: "Don't you believe I will shoot you?" Cal Rollins replied: "No," and turned toward his brother, Dural, intending to go away, and the defendant again said: "Don't you believe I will shoot you?" Cal Rollins then whirled, facing the defendant, and just as he did so the defendant shot him with a pistol. Cal Rollins was about ten feet away from the defendant and says that he made no demonstration to draw a gun or to do the defendant any harm. Other witnesses for the State testified that at the time the defendant shot Cal Rollins, the latter was not making any hostile demonstrations toward him at all. Other witnesses said that just prior to the shooting, Cal Rollins had run his hand in his pocket as if to draw a weapon of some kind, and another witness states that a knife was found near where he was standing after the

shooting. The defendant testified for himself and stated that Cal Rollins was approaching him with a knife in his hand, and that he began to walk backward; that Cal Rollins kept approaching him with the knife, and that he then jerked out his pistol and shot him in order to save his own life; that at the same time he was trying to keep his eyes on Dural Rollins, who was trying to slip up on him with a knife. He stated that Cal wheeled after he shot, and ran away; that he did not try to shoot Cal Rollins any more, and gave up his gun and went home immediately after the shooting. He said that he had carried his pistol with him to the picnic because threats had been made against him, and that he carried it in self-defense. Other witnesses tended to corroborate his testimony.

It is first contended by counsel for defendant that the court erred in giving the instruction No. 10. They contend that the instruction makes the guilt or innocence of the defendant depend upon the existence of reasonable grounds of belief that he was in danger, regardless of how the danger appeared to him. We do not deem it necessary to set out the instruction complained of. At the request of the defendant, the court fully instructed the jury on the question of appearance of danger to him. In discussing an objection to an instruction similar to the one now complained of in the case of *Manasco* v. *State*, 104 Ark. 397, the court said that the instruction, when taken in connection with an instruction given at the request of the defendant, was not open to the objection that it substitutes the judgment of the jury for the judgment of the defendant as to the necessity for taking life, and that the instructions taken together correctly declared the law, as announced by this court. If counsel for defendant thought at the trial that the instruction was open to the construction that they now insist on, they should have made a specific objection to it, and, inasmuch as the court gave, at their request, two instructions on the subject of the appearance of danger to the defendant, there can be no doubt that it would have

changed the phraseology of the instruction now complained of, had a specific objection been made to it.

It is next contended that the court erred in giving the following instruction:

"You are further instructed that every sane man is presumed to intend the natural and probable consequences of his acts."

The court should not have given this instruction; but, under the facts, as disclosed by the record, we do not think it was prejudicial to the rights of the defendant. The defendant himself testifies that at the time he shot the prosecuting witness, the latter was advancing upon him with a knife and was close upon him, and that he shot in order to save his own life. In other words, he admitted that he drew his pistol and shot the prosecuting witness with the intent to kill him because he thought his own life was in danger. Therefore, we can not see in what manner he was prejudiced by the giving of the instruction.

Counsel for the defendant next complain that the court erred in giving instruction No. 17. They say that the defendant was being tried for shooting Cal Rollins, and that they object to instruction No. 17 because in it the court, in effect, told the jury that if the defendant thought he might be murderously assaulted by Al Rollins, Cal Rollins or Dural Rollins, it was his duty to do everything in his power, consistent with his safety, to avoid the difficulty, and if he failed to do so he can not be excused. According to the testimony of the defendant himself, at the time he shot at Cal Rollins he believed that the three Rollins brothers were engaged in making a concerted attack upon him. Under these circumstances, it was all one transaction, and we do not think the court erred in giving the instruction.

It is also contended that the court erred in giving instruction No. 18, which is as follows:

"If you believe from the evidence in this case that the defendant, Jim Coulter, after he drew his pistol, could have reasonably prevented an injury to himself

without shooting, and that such fact was apparent to him at the time, and he failed to do so, he could not set up the plea of self-defense.''

Counsel object to this instruction because they say the jury might have drawn the conclusion therefrom that the court was of the opinion that there was evidence to the effect that after Jim Coulter drew his pistol, he could have done something to have prevented the injury to himself without shooting, when the undisputed evidence is to the effect that the shot was fired just as the pistol was drawn. Cal Rollins testified that the defendant had the pistol in his hand some moments before he shot at him; that he had started to leave, and the defendant said to him: ''You do not believe I will shoot you?'' That he then whirled toward the defendant, and the defendant then fired when he was about ten feet away from him. Therefore, we do not think the court erred in giving this instruction.

Counsel for defendant complain that the court erred in refusing to give instruction No. 4, requested by them. This instruction was directed toward the question of the presumption of innocence and that of reasonable doubt. The court, in other instructions given for the defendant, fully instructed the jury on both these questions, and there was no error in refusing the instruction complained of.

It is insisted that the court erred in refusing to give instruction No. 8, which is as follows:

''If you believe from the evidence, or if the evidence raises in your mind a reasonable doubt that the alleged assault was committed by the defendant while he was acting under the influence of passion and excitement caused by a provocation apparently sufficient to make the passion irresistible, you will acquit the defendant of assault with intent to kill.''

The court, however, did give, at the request of the defendant, instructions Nos. 7 and 13, which are as follows:

''Before you can convict the defendant of assault

with intent to kill, you must find and believe from the evidence beyond a reasonable doubt, first, that at the time of the alleged assault he had in mind the specific intent to take the life of the party alleged to have been assaulted; second, that he at the time had the present ability to carry such intent into execution; and third, that the killing, had death ensued, would have amounted to murder.''

''The court tells you that while mere words, however opprobrious, will not justify an assault, yet words accompanied by acts of a violent or threatening character, will be a provocation that may reduce the crime from assault with intent to kill to an aggravated assault, or to a justification of aggravated assault.''

Thus it will be seen that the matters embraced in instruction No. 8 were fully covered by instructions Nos. 7 and 13. In No. 13 the court told the jury that while mere words, however opprobrious, would not justify an assault, yet words accompanied by acts of a violent or threatening character would be a provocation that might reduce the crime from assault with intent to kill to aggravated assault or to a justification of aggravated assault.

The defendant was a witness for himself, and on cross examination the prosecuting attorney asked him if he had not been convicted for killing his brother. Counsel for defendant objected to this question, and the court stated that it was proper to ask him as a witness if he was convicted as a matter affecting his credibility. Counsel for defendant remarked that if the defendant did kill his brother he was justifiable, and the court then remarked to counsel for defendant: ''You know, Judge Steel, he was not justifiable.'' The defendant excepted to this remark of the court, and the court said: ''I did not mean that; I meant it would not be competent to go into that question here in this trial at all. It is competent to ask him if he had been convicted of a felony. You can ask him how long he has been living over there, but as to how long he stayed in the penitentiary, that is not

material." At the request of the defendant, the court instructed the jury as follows: "You will not consider the fact that defendant has previously been convicted of a crime as in any manner establishing his guilt of the crime charged, but it may be considered only as it may affect his credibility." Under these circumstances, we do not think that the remarks made by the court were prejudicial to the rights of the defendant. The court at once explained to the jury what he meant by the remarks, and explained to the jury that the defendant could only be asked if he had been convicted of a felony to affect his credibility as a witness, and that it did not tend in any way to prove him guilty of the crime for which he was on trial. He later instructed the jury to this effect, and, as above stated, this action removed any prejudice that might have resulted from the remark.

The court gave many instructions at the request of the State and of the defendant. The jury were fully instructed on every phase of the case, and the judgment will be affirmed.