JONESBORO, LAKE CITY & EASTERN RAILROAD COMPANY
*v.* GAINER.

## Opinion delivered April 20, 1914.

1. EVIDENCE—CONTRADICTING OWN WITNESS—FOUNDATION.—Where a party is taken by surprise by the testimony of his own witness, such testimony being entirely different from what the witness had given the party calling him to understand that his testimony would be, the party who is taken by surprise and who is prejudiced by the testimony of his own witness, may contradict the witness with other evidence, and by showing that he had made statements different from his present testimony, provided the proper foundation is laid for contradiction of the witness by calling his attention to the circumstances of the time and place.   (Page 481.)

2. RAILROADS—FAILURE TO PROVIDE HEADLIGHT—SPECIFIC RULING.—If a party desires a ruling upon the issue of whether the failure to provide a headlight is negligence *per se* or only *prima facie*, he must ask a specific ruling on the point.   (Page 482.)

Appeal from Mississippi Circuit Court, Osceola District; *W. J. Driver,* Judge; affirmed.

### STATEMENT BY THE COURT.

This suit was instituted by appellee against appellant to recover damages for personal injuries. Appellee alleged that his injury resulted from negligence of appellant in operating its train without an electric headlight as prescribed by the statute of 1907, and without keeping a lookout as prescribed by the statute of 1911.

On the 13th of December, 1912, appellee, who was a timber cutter or logger, took a hand car which was stand-

ing near appellant's railroad at a lumber camp three miles south of Ross. He and a co-laborer, James Macklin, placed the hand car on the railroad track and started south to what is known as Chisenhall's spur for the purpose of securing feed. Appellee and his assistant knew at the time that there was a train on the track behind them, approaching from the north and going south, in the same direction that appellee was going. After appellee and his assistant had proceeded about a quarter of a mile, and when they had reached Chisenhall's switch, they lifted the hand car from the main line to the rails of the switch or spur track and started to push it along the spur in order to let the train pass them. The engine on the train was pushing two flat cars ahead of it, and one of these struck appellee, inflicting the injury of which he complains. The night was very dark. The headlight on the engine was between 1,100 and 1,300 candlepower, but at the time of the injury, it was not burning at all. The train crew tried to light it at Ross. It would flash and burn for a quarter of a mile, and then it would not burn for a mile or two. They had the same trouble with the light on the previous night, and once or twice before that. When the employees of appellant attempted to turn on the light at Ross, the engine didn't have sufficient steam to heat the coring, and that is why the light didn't work.

Ross, the place where they first tried to light the headlight, was between fifteen and twenty miles from Wilson, and Midway, another station, is only a short distance from Wilson, the end of the line. By the time they had reached Midway, they had up enough steam to heat the coring and make the light work, and it burned from then until the train reached Wilson. Appellee was injured about three miles from Ross.

Appellee and his companion, while removing the hand car from the main line, looked toward the train and saw no light on the flat cars or elsewhere; they could have seen lights if there had been any burning. They heard the engine puffing and supposed it was the front end of the train. They were unconscious of the fact that there were two flat cars in front of the engine. They looked

for the headlight in order to see if they had time to get the hand car off the track and to get themselves in the clear. They didn't see any one on the flat cars in front with a lantern.

One witness was asked, over the objection of the appellant, if it was not the custom of loggers to use hand cars on the track for the purpose of hauling feed to the log camps, and the witness replied: "I don't know; I could not say; they have an agreement with the company about running these speeders and hand cars; I don't know anything about it; I never saw a hand car with the feed on it."

The court permitted the attorney for the appellee, over the objection of appellant, to ask witnesses the following question:

"State whether or not you heard me ask this fireman, Metcalf, whether or not there was any light out or any one out on the flat cars?" and in permitting the witnesses to answer, "If there was, they didn't see him or it."

The verdict and judgment were in favor of the appellee in the sum of $2,000, and this appeal has been duly prosecuted. Other facts stated in the opinion.

*Coleman, Lewis & Cunningham,* for appellant.

1. The testimony of Gainer that it was the custom for loggers to use hand cars on the track was inadmissible without showing knowledge on the part of defendant of the alleged custom. 12 Cyc. 1098; 107 Ark. 93.

2. It was error to allow testimony as to what Metcalf said previously. 72 Ark. 582.

3. The "headlight statute" is purely a penal statute and a violation of it furnishes no cause of action in behalf of a trespasser, to whom the railroad owes no duty except to exercise ordinary care to avoid injury after discovery of his peril. The first instruction was error, and the court also erred in refusing the requests asked by defendant. 62 Ark. 235; *Ib.* 245; 65 *Id.* 532; 71 *Id.* 451; 74 *Id.* 304; 76 *Id.* 309; 104 *Id.* 596. Liability for failure to keep a lookout was defeated by contributory negligence. Cases *supra;* 98 Ark. 77. The headlight act

made no change in the law as to contributory negligence. The headlight statute is no part of the lookout statute—they are separate acts. Railroads are not bound to be on the lookout for trespassers. 81 Ark. 371; 8 L. R. A. (N. S.) 1069; 13 Am. St. 1032. Since the passage of the lookout statute, this rule has been modified. 98 Ark. 77. But the headlight statute creates no duty as to trespassers. 85 Kan. 346; 164 Ala. 73; 25 Eng. Ann. Cas. 1006, note; 200 Mo. 377. The violation of a statute furnishes no cause of action to a person injured unless the person injured is within the class for the protection of which the statute was enacted. Cases *supra.*

*J. T. Coston,* for appellee.

1. The instructions were more favorable to the defendant than those approved in 162 S. W. 53. The jury could not find for plaintiff at all without finding: (1) That a constant lookout for persons on the track was not kept; (2) that the keeping of a constant lookout alone would have prevented the injury, or (3) that the keeping of a constant lookout combined with a headlight of 1,500 candle-power would have prevented the injury. 157 S. W. 411; 162 *Id.* 53.

2. Even if incompetent evidence was admitted, it was not prejudicial, as there was ample testimony to prove the facts otherwise. 32 Ark. 346; 20 *Id.* 234.

3. The headlight statute is mandatory. 155 S. W. 95.

4. The objections to instructions were general. 65 Ark. 259; 112 S. W. 887.

5. The proper foundation was laid to impeach the witness Metcalf. 42 Ark. 553; Kirby's Dig., § 3137; 72 Ark. 582.

6. The custom of loggers was properly proven and competent. 157 S. W. 411; 64 *Id.* 184.

WOOD, J., (after stating the facts). 1. The testimony admitted over the objection of appellant did not tend to establish a custom for loggers to use handcars on appellant's road for the purpose of hauling feed. The ruling of the court in permitting the questions objected

to and the answers of the witnesses was in no wise prejudicial to appellant.

2.   Witness Metcalf, who was the fireman on the engine of appellant, was called by the counsel for appellee, and testified that the headlight was not lit.  He did not know whether there was any one on the front of the cars or not.  He saw one stop signal and a white light just as he got on the seat box.  The light looked to be on the flat car.  He saw the stop signal given with a white lantern, but did not know who gave it.  It was between 7:30 and 8 o'clock; had not been dark very long.  The light looked to be on the flat car.

He was then asked by counsel for appellee the following question:  "Didn't you say a few minutes ago, in the back room to me, in response to a question, if there was any one on the lookout, you didn't know it?" and answered, "I said a headlight, but I saw a stop signal given with a lantern by some one."

Counsel for appellee, being surprised by the testimony of witness Metcalf, called the witnesses and asked them whether or not they were in the witness room, and asked them whether or not they heard counsel ask Metcalf if there was any one or any headlight on the flat cars in front of the engine, to which the witnesses, over objection of appellant, answered in the affirmative, and the witnesses were further asked what Metcalf said, and answered, "He said if there was, he didn't know anything about it."

There was no error in the admission of this testimony.  Where a party is taken by surprise at the testimony of his own witness, such testimony being entirely different from what the witness had given the party calling him to understand that his testimony would be, the party who is taken by surprise, and who is prejudiced by the testimony of his own witness, may contradict him with other evidence, and by showing that he had made statements different from his present testimony, provided the proper foundation is laid for contradiction of the witness by calling his attention to the circumstances of the time and place, etc.  *Ward* v. *Young,* 42 Ark. 553.

Here the proper foundation was laid and the testimony was competent for the purpose of contradicting witness Metcalf whose testimony was a surprise to the appellee, inasmuch as he made a different statement to appellee from the testimony given at the trial.

3. The instructions of the court on the headlight and lookout statutes were in conformity with the law as announced by this court in the construction of the statutes in the recent case of *Chicago, R. I. & P. Ry. Co.* v. *Bryant,* 110 Ark. 209, 162 S. W. 51. See, also, *Chicago, R. I. & P. Ry. Co.* v. *Gunn, Admr.,* 112 Ark. 401. And it could serve no useful purpose to reiterate the doctrine announced in the foregoing cases.

The question as to whether or not the statute creates an absolute liability for failure to comply with its terms, and whether or not such failure is negligence *per se* or only *prima facie* evidence of negligence is not presented by this record. Appellant made no specific objection to the instruction, and if it desired a ruling on the question as to whether or not the failure to provide a headlight as required by the statute made the company absolutely liable for an injury resulting therefrom, appellant should have made a specific objection to the instruction to the effect that it did not make appellant's liability depend on its negligent failure to provide the headlight and to keep the lookout required. Furthermore, the uncontradicted evidence showed that the engine was only provided with a headlight of between eleven and thirteen hundred candle-power, when the statute requires a headlight of fifteen hundred candle-power. See Acts 1907, page 1018.

Again, the testimony showed that the reason that such headlight as was provided did not burn to its full capacity was because the engine was not carrying sufficient steam. The engineer testified, "Our fuel was not very good that day, and sometimes it takes considerable heat to heat up the coring in the headlight. If the core is not heated, it has a tendency to cause the light to flash.

4. There was no prejudicial error in the rulings of the court in giving or refusing prayers for instructions, or in the admission or rejection of testimony, and there was ample evidence to sustain the verdict. The judgment is therefore correct, and it is affirmed.