MISSOURI PACIFIC RD. CO., THOMPSON, TRUSTEE, v. SULLIVAN.

4-5316                                    122 S. W. 2d 947

Opinion delivered December 19, 1938.

361

*R. E. Wiley* and *Henry Donham,* for appellant.

*Tom W. Campbell, W. F. Denman* and *Pace & Davis,* for appellee.

HOLT, J. Appellee, Martin Sullivan, filed suit in the Nevada circuit court against appellants for injuries he received on account of the alleged negligence of appellants, when he fell through a manhole of the water tank on the tender of an engine used to switch cars in the yards at Hope, Arkansas.

The negligence of appellants, as set up in the complaint, is as follows: "That appellee while working with the engine doing switching saw, while on the ground,

that a clinker hook was hanging over the edge of the tank attached to the engine, about three or four feet on the fireman's side, in a dangerous position and that he climbed upon the tank for the purpose of pulling it back on the tank and putting it in its proper place; that when he got up on top of the tank he stooped over to pick up the clinker hook and as he raised up with the same one end of the hook seemed to be caught or fastened and this overbalanced him causing him to step into the manhole which was open, thereby causing him to strike his left knee in such manner that he was permanently injured; that appellant Garrett, who had charge of said engine a short time before said accident, and who put water into the tank of said engine a short time before said accident occurred, had carelessly and negligently left said manhole open thereby causing the plaintiff to fall into said manhole and to be injured.'' The answer of appellants denied every material allegation in the complaint and, in addition thereto, pleaded the contributory negligence and assumption of risk on the part of appellee. A trial to a jury resulted in a verdict for appellee in the sum of $20,000.

The injuries to appellee were of a serious and permanent nature. No complaint is made here about the size of the verdict rendered, and the correctness of the instructions given is not questioned. The only assignments of errors presented here are (1) that the evidence is not sufficient to support the verdict; (2) that the appellee assumed the risk; and (3) that the court erred in permitting counsel for appellee to read to witness, Wyatt, an affidavit previously made by him and asked him if the contents of said affidavit were true, and in refusing to exclude this testimony.

Stating the facts in their most favorable light to appellee, they are substantially as follows: Appellee, Sullivan, was in the employ of appellant railroad company as brakeman on the night of the alleged injury, and prior thereto had been continuously employed by the company as brakeman for 13 years. On the night of October 31, 1936, at about 8:30 o'clock while working in the railway yards at Hope, appellee noticed the clinker hook extend-

ing out over the side of the engine in a dangerous position. This clinker hook is a metal rod about 12 to 15 feet long, and is used to draw clinkers from the furnace of the engine. Appellee climbed up the ladder on the left rear of the engine tender to adjust this clinker hook and put it in a place of safety. As he mounted the ladder he carried on his left arm an electric "bulls eye" lantern which threw the rays of light in front in the way that it was pointed and did not afford a complete circle of light. The top of the tender is surrounded by a raised solid, metal guard about 7 or 8 inches high, and in the center is a raised platform some 4 or 5 inches high covered by three manhole lids, each being about 25 x 33 inches. When appellee reached the top of the ladder, he stepped on the deck of the tender facing the left-hand or fireman's side. He then stepped on the left manhole cover, and with his lantern pointing toward the front and fireman's side of the engine and with his back to the rear, he reached down and took hold of the clinker hook with both hands (the clinker hook weighed between 40 and 50 pounds) and as he attempted to lift the hook it seemed to be caught, he was thrown off balance and fell into the middle manhole, or water tank, which was open at the time. He did not know that it was open. The night was very dark.

During his entire 13 years service with the railroad he had never known one to be left open before. The fall into the tank injured his left leg, especially his knee. When he got down from the tank he reported his injury to some other employees, but stated that he did not think it amounted to much at the time. Later, the injury developed into a most serious one which proved to be of a permanent nature. The facts further show that some three hours before this alleged injury, a Mr. Garrett, one of the appellants, had spotted this engine and tender near a city water connection, attached a 50-foot hose, into one end of which had been inserted a 16-inch pipe about 1½ inches in diameter for a nozzle, had carried this hose up on top of the engine, and through this middle manhole, into which appellee claims to have fallen and filled the tank with water. Garrett, on behalf of

appellants, testified that he raised the manhole cover a few inches, inserted the nozzle and, after the tank was filled, removed the nozzle and closed the opening. The facts further disclose that during this three-hour period from the filling of the tank until the alleged injury to appellee, no one had been on top of the tender except appellant, Garrett, who filled the tank at about 5:30 p. m., and appellee, Sullivan, who went on the tank to remove the clinker hook at about 8:30 p. m. of the same day.

Giving to the above facts their strongest probative force, as we must do, was the evidence sufficient to support the jury's verdict, and did the appellee, Sullivan, assume the risk?

While it is true that no eye-witness testified that he saw appellant, Garrett, leave the manhole in question open, still we think there was sufficient evidence of a circumstantial nature to go to the jury on this point. We have uniformly held that facts in issue may be established by circumstantial evidence as well as by direct testimony. In *St. Louis, Iron Mountain & Southern Railway Co.* v. *Hempfling,* 107 Ark. 476, 156 S. W. 171, this court said: ''In an action against a railroad company for negligent killing, where there is no eye-witness to the injury, and the cause thereof is not established by affirmative or direct proof, if the facts established by the circumstances will justify an inference that the negligent condition alleged produced the injury, the jury are not left to the domain of speculation, but have circumstances upon which, as reasonable minds, they may ground their conclusions.''

In *Pierce Oil Corporation* v. *Taylor,* 147 Ark. 100, 227 S. W. 420, this court said: ''Plaintiff was not required to establish those facts by direct evidence, but could do so by proof of circumstances which warranted such an inference.'' And again in *Hanna* v. *Magee,* 189 Ark. 330, 72 S. W. 2d 237, we said: ''The settled rule, which has been many times approved by this court, is that a well connected train of circumstances is as cogent of the existence of a fact as an array of direct evidence, and frequently outweighs opposing direct testimony, and that any issue of fact in controversy can be established by cir-

cumstantial evidence when the circumstances adduced are such that reasonable minds might draw different conclusions." To the same effect, see *Holmes* v. *Goldsmith,* 147 U. S. 150, 13 Sup. Ct. 288, 37 L. Ed. 118.

We cannot say as a matter of law that there is no substantial evidence, as disclosed by this record, to support the verdict.

On the question of assumed risk, appellee, Sullivan, under his employment as brakeman assumed all the risks ordinarily incident to that employment. He assumed no risk that arose from the negligence of the master himself, or any fellow-employee, unless it be shown that he was aware of the negligence and appreciated the danger therefrom to which he was exposed, or unless it be shown that the risk was so obvious that it would under the circumstances be seen and appreciated by an ordinary prudent person. This is a question for the jury to determine. Appellee had a right to assume, under the facts in this case, that the manhole in question would be kept closed. He had been working for appellant as brakeman for some 13 years, and had never known of one of these manholes to be left open. He testified positively that he did not know the manhole was open. In *Choctaw, Oklahoma & Gulf Railroad Co.* v. *McDade,* 191 U. S. 64, 24 Sup. Ct. 24, on p. 26, 48 L. Ed. 96, the Supreme Court of the United States said: "The charge of the court upon the assumption of risk was more favorable to the plaintiff in error than the law required, as it exonerated the railroad company from fault if, in the exercise of ordinary care, McDade might have discovered the danger. Upon this question the true test is not in the exercise of care to discover dangers, but whether the defect is known or plainly observable by the employee."

In *Texas & Pac. Ry. Co.* v. *Archibald,* 170 U. S. 665, 18 Sup. Ct. 777, 42 L. Ed. 1188, the Supreme Court of the United States said: "Without now considering the question whether the rule in this respect charges an employee with knowledge of defects, except with regard to such appliances or instruments as he is engaged himself in using, we think it sufficient to say that the law does not, under any circumstances, exact of him the use of diligence

in ascertaining such defects, but charges him with knowledge of such only as are open to his observation. Beyond that, he has the right to presume, without inquiry or investigation that his employer has discharged his duty of furnishing him with safe and proper instruments and appliances.''

We hold, therefore, that the jury was warranted in finding that appellee's injury was not the result of a risk which he had assumed.

Counsel for appellants cite a great many cases to sustain the contrary view. However, after a careful investigation of the holdings in these cases, we are convinced they do not control here.

Appellants in their third assignment contend: ''The court erred in permitting the attorney for appellee to read to the witness, O. L. Wyatt, an affidavit previously made by him and ask him if the contents of said affidavit were true, and refusing to exclude the testimony of witness Wyatt with reference to said affidavit from the jury.'' Appellants in putting on their defense testimony introduced a witness, a Mr. Gentry, whose testimony, if believed, was very material. Gentry testified to the effect that he saw appellee, Sullivan, on the tender of the engine at the time of the alleged injury to him before he fell into the manhole, and heard a sound which indicated that appellee himself had opened the lid or covering over the manhole. On cross-examination of this witness, Gentry, appellee's counsel laid the foundation for his impeachment by asking him if he had not in the spring of 1937 in substance stated to Mr. Wyatt that he did not know anything about the accident in question, that he was not down there at the time and knew nothing about it. Gentry had denied he had made any such statement to Wyatt.

Appellee's counsel in rebuttal placed on the stand witness, Wyatt, and in the course of his direct examination the following occurred: ''Q. I will ask you whether or not in the course of your investigation you went to see Mr. Gentry? A. I talked to all of them at Rex Roe's place. They stay down there and I thought maybe it was one of them. Q. Did you talk to Mr. Gentry? A. I am not so sure whether I walked out to the truck and

asked them or not. It was generally known that I was trying to find out who the men were, but he is the man that works in Hope and goes around with all of them— his bunch he runs with. Q. Mr. Wyatt, you made an affidavit, didn't you? A. Yes, sir, I talked to Mr. Gentry today and made an affidavit.'' Wyatt stated positively in the affidavit that he had talked to Gentry in the spring of 1937 and that Gentry told him he was not down there on the night in question and knew nothing about the case at all.

Counsel for appellee, having laid the proper foundation for impeaching Gentry, was taken by surprise when Wyatt upon being asked by appellee's counsel: ''Did you talk to Mr. Gentry?'' answered: ''I am not sure.'' Counsel for appellee then said: ''This is an affidavit taken and signed by you and I am reading it in order to refresh your memory.'' The affidavit was then read in which Wyatt stated that Gentry had told him that he was not down there that night and did not know anything about it. When Wyatt was asked if the statement he made in the affidavit was true and whether Gentry had made that statement to him in the spring of 1937, he answered in the affirmative.

We hold that there was no error in permitting this evidence to go in and admitting the affidavit.

Permitting counsel to ask leading questions is largely within the discretion of the trial court and unless this discretion be abused it is not necessarily error to admit it. *Plumlee* v. *St. Louis Southwest Ry. Co.*, 85 Ark. 488, 109 S. W. 515.

We think the testimony and affidavit introduced here were proper on the ground that appellee was taken by surprise by the testimony of his own witness, when his witness said, ''I am not sure.'' Section 5196 of Pope's Digest says: ''The party producing a witness . . . may contradict him with other evidence and by showing that he has made statements different from his present testimony.''

In *Jonesboro, Lake City & Eastern R. R. Co.* v. *Gainer,* 112 Ark. 477, 166 S. W. 571, this court said: ''Where a party is taken by surprise at the testimony of

his own witness, such testimony being entirely different from what the witness had given the party calling him to understand that his testimony would be, the party who is taken by surprise, and who is prejudiced by the testimony of his own witness, may contradict him with other evidence, and by showing that he had made statements different from his present testimony, provided the proper foundation is laid for contradiction of the witness by calling his attention to the circumstances of the time and place, etc."

In *Ward* v. *Young,* 42 Ark. 542, this court said: "It was also insisted that the court erred in admitting J. O. Young's testimony, to contradict the testimony of Will Ward, the plaintiff's own witness. Section 2523 of Gantt's Digest provides that 'the party producing a witness is not allowed to impeach his credit by evidence of bad character, unless it is in a case in which it is indispensable that the party should produce him; but he may contradict him with other evidence, and by showing that he had made statements different from his present testimony.' The proper foundation was laid here by inquiring of the witness, whom it was proposed to contradict, concerning the previous statement, with the circumstances of time, etc."

On the whole case we find no errors, and the judgment is accordingly affirmed.