MISSOURI PACIFIC RAILROAD COMPANY, THOMPSON, TRUSTEE, *v.* MERRELL.

4-6006                                      143 S. W. 2d 51

Opinion delivered June 24, 1940.

*Henry Donham* and *E. W. Moorhead,* for appellant.
*L. B. Smead* and *Tom W. Campbell,* for appellee.

McHANEY, J.   Appellee brought this action against appellants and the engineer and fireman on freight train

No. 60 to recover damages for personal injuries sustained by him when said train ran over his left hand early in the morning of January 16, 1939, at a point just northeast of railroad station in Judsonia, White county, Arkansas. He alleged in his complaint that the train was being operated without a headlight until it was almost on him, when the light was suddenly switched on, which blinded him, and, in an attempt to get out of the way of the train, he slipped or stumbled and fell with his left hand on the track, and before he could remove same it was run over. It was also alleged that the railroad is double tracked and the train was running on the northbound track; that he lived about two miles northeast of Judsonia; that there was no direct road from his home to town; that it was customary for him and others living in his vicinity to walk along the railroad to town; that he was working at the box factory and was on his way to work when he was injured at about 5:45 a. m. on said date. Failure of the operatives to keep a lookout was also alleged as negligence. The answer consisted of a general denial and a plea that appellee was a trespasser, and that his injuries were due to his own negligence.

Appellants and the engineer and fireman requested directed verdicts in their favor at the conclusion of the evidence for appellee, at the conclusion of all the evidence and in instruction No. 1, all of which were refused. Trial resulted in a verdict and judgment in favor of the operatives, but against Thompson, trustee, for $17,500.

Only two assignments of error are argued for a reversal of this judgment, one that it is not supported by the evidence and the other that it is excessive. It will be unnecessary to discuss the latter, as we agree with appellants that there is no substantial evidence to support the verdict and judgment.

The fact is that appellee was either a trespasser or a licensee on the track of appellants. His own counsel concedes that he was a licensee. It can make no difference which, as appellants owed him no more duty as a licensee than they did as a trespasser, which was not to injure

him willfully or wantonly after discovering his peril, or if his peril could have been discovered "in time to have prevented the injury by the exercise of reasonable care after the discovery of such peril." The lookout statute, § 11144 of Pope's Digest, requires all persons running trains to keep a constant lookout for persons and property on the track, and if any person or property is killed or injured by neglect to keep such lookout, the railroad company shall be liable to the person injured "for all damages resulting from neglect to keep such lookout, notwithstanding the contributory negligence of the person injured, where, if such lookout had been kept, the employee or employees in charge of such train of such company could have discovered the peril of the person injured in time," etc., as above quoted.

It is earnestly argued for appellee that the evidence was sufficient to take the case to the jury on the question of the violation of this statute, because he testified the headlight on the locomotive was not operating until it got in about twenty-five feet of him, when it either came on automatically or was switched on, and that, since he said it was very dark at the time, it was impossible for the engineer and fireman to keep a lookout in the absence of the headlight. Assuming that the headlight was not burning temporarily, although both operatives testified it was working and in good order, and that they were keeping a constant lookout, still no case was made for the jury because he knew the train was coming from the south to the north, meeting him, and he knew it in ample time to have gotten entirely out of the way and off both tracks. He says he did not know which track it was on, whether the north or the southbound track, and that the headlight would have enabled him to know which track the train was on. This testimony cannot be accepted as substantial or as trustworthy. He had been walking these tracks long enough to know, and must have known, just as every one else knows that northbound trains run on the northbound tracks and that southbound trains run on southbound tracks. He was walking south between the two main lines of track and says himself he heard the

train from the south coming north when it was beyond the curve in the tracks toward the river, possibly a quarter of a mile away. He must have known and cannot be heard to say that he did not know which track it was on. Therefore, the headlight could not have served him any useful purpose, as all it would have done for him was to indicate which track the train was on, a fact he was bound to have known without it. But, if we assume that he did not know, he had ample time to have gotten off both tracks, or clear off the right-of-way, and have thus prevented the injury to himself.

Counsel argue further that the fact that the operatives of the train did not see appellee and the fact that his hand was mashed off by the train, about which there can be no dispute, show that the operatives were not keeping a lookout in violation of said statute, and that a case was made for the jury. But we do not think so. If they had seen appellee, he was in a place of safety, walking down between the two main line tracks and would not have been hit, had he not fallen with his hand on the west rail of the northbound track. If they could see him, he could have seen the train, and they had the right to assume that a normal person, walking between the two sets of tracks, in a place of safety, would keep out of the way of the train. In this respect this case is somewhat like the case of *St. L.-S. F. Ry. Co.* v. *Robinson,* 196 Ark. 964, 120 S. W. 2d 567, where Robinson undertook to flag a passenger train as it passed through the non-flag station of Meadows, late in the afternoon or early night, and his hand or arm was struck and injured by the train which failed to stop. The lookout statute was relied on as here. The operatives of the train, as here, testified they were keeping a lookout with the headlight burning, but that they did not see Robinson. The court said: ''Had the operatives of the train discovered appellee's presence upon the track—and there is no testimony to support a finding that they did—it would not have appeared to them that appellee was unaware of the danger through the approach of the train. He was not oblivious of that fact, and it would not have so appeared had he been seen.

On the contrary, he was fully apprised of the approach of the train, and there could have been no reason for believing that he was about to immolate himself. Appellee testified that his sight was not good and that his hearing was bad, but the fullest possession of these faculties could have conveyed no information to him which he did not have. He had just walked six miles, and there appears to have been no reason why he could not have walked about six feet more to safety. Indeed, he had reached a place of safety but for the fact that he threw his hand back, evidently still trying to flag the train.''

A judgment for Robinson was reversed and the cause dismissed because no case was made for the jury under the lookout statute ''for the reason that it appears that appellee's negligence was the sole proximate cause of his injury.''

Appellee cites and relies on a number of our cases to support his contention that a jury question was made, among them are *C., R. I. & P. Ry. Co.* v. *Bryant,* 110 Ark. 444, 162 S. W. 51; *C., R. I. & P. Ry. Co.* v. *Gunn,* 112 Ark. 401, 166 S. W. 568, Ann. Cas. 1916E, and *J. L. C. & E. Rd. Co.* v. *Gainer,* 112 Ark. 477, 166 S. W. 571. We think these cases inapplicable here. In all of them it was undisputed that the train was being operated without a headlight in violation of the headlight statute, § 11069, Pope's Digest. In the Bryant case he did not know that the train, or passenger motor car, was approaching. In the Gunn case, Hodges, the deceased, was drunk and riding on a speeder with a negro woman, who was drunk also, and a negro man who operated the speeder, and the latter testified that, although he looked back when he thought of it to see if a train was approaching, he did not observe the approach of the train until it was about to strike the speeder. In the Gainer case, Gainer and his companion were in the act of. moving a hand car from the main line when they were struck by one of two flat cars being pushed ahead of the engine of the train. They knew the train was coming although the headlight was not burning, and would have had time to get out of the

way, but for the two flat cars which they did not know were ahead of the engine.

These cases are readily distinguishable from the case at bar. Here appellee knew the train was coming, was bound to have known it was the track to his left, or the northbound track, was in a place of safety between the two tracks, or if he thought he wasn't, he could have moved over to the track on his right, or even off the entire right-of-way. If appellee was where he said he was, between the two tracks, and if the headlight had been burning and the operatives had discovered his presence there, they would have had the right to assume that he would not put himself in the path of the train, but, with knowledge of its presence, he would remove himself from all possible danger by lying down, moving to his right or some action on his part for self-preservation. There was no duty on them to stop or even slow down the train for one in a place of safety or for one in a place of danger, who knew of the danger and who had ample time to get away, unless it could be done after discovery of the peril or the peril could have been discovered by keeping such lookout.

We, therefore, conclude that appellee's own negligence was the sole proximate cause of his injuries, and that the judgment should be reversed, and the cause, having been fully developed, dismissed.

It is so ordered.

HUMPHREYS, MEHAFFY and BAKER, JJ., dissent.