FLETCHER *v.* JOHNSON.

5-1943 328 S. W. 2d 373

Opinion delivered November 2, 1959.

[Rehearing denied November 23, 1959]

*J. H. Spears* and *Ralph W. Sloan,* for appellant.

*Hale & Fogleman,* for appellee.

PAUL WARD, Associate Justice. On September 22, 1957, a large trailer truck allegedly belonging to one Hollis Fletcher and being driven at the time by Henry Atkins, Jr., collided with an automobile occupied by W. H. Johnson, his wife, Consada, and their minor daughter, Carolyn. The collision took place near the city of West Memphis on Highway 63. It is alleged that the occupants of the automobile were injured and that the automobile was damaged as a result of the collision.

At a trial held on December 4, 1958, the jury returned a verdict in favor of Mr. Johnson in the amount of $750.00 for damages to the automobile and $10,-000.00 for personal injuries, a verdict in favor of Mrs. Johnson in the amount of $15,000.00 for personal injuries, and a verdict in the amount of $2,000.00 in favor of their minor child (Carolyn). Judgment was entered accordingly.

Upon appeal to this court appellant, Fletcher, abstracts no instructions and complains of none except one as hereinafter set out, but he does seek a reversal on five separate assignments of alleged error. These allegations of error are substantially as follows: Point one, the judgments are excessive; Point Two, the court should have declared a mistrial; Point Three, there was no valid service; Point Four, the court erred in allowing appellees to amend their complaint; and Point Five, the court erred in giving appellees' requested Instruction No. 3.

Before proceeding to the discussion of the points above mentioned, it is in order to make a brief explanation of one phase of this appeal about which there is

considerable discussion by both sides. In the original complaint filed by appellees on October 14, 1958, it was alleged that the vehicle of the defendant (Fletcher) was responsible for the resulting damages. On the same day a summons was issued against Fletcher and, on November 3, 1958, Fletcher filed an answer in which, among other things, he specifically denied all allegations of negligence and in addition thereto pleaded contributory negligence. On November 15, 1958, Fletcher filed an amendment to his answer in which he denied "that he is individually the owner of the truck described in plaintiff's complaint". During the trial testimony was produced to the effect that Fletcher was not the owner of the truck individually but that it belonged to a partnership composed of himself and two other people, namely, Henry Sciambra and Leo Bondi. Thereupon appellees asked to have the complaint amended to conform with the proof and the court gave them permission to do so. It appears from the record, however, that this amendment was not considered as adopted because no instruction was requested or given referring to Sciambra or Bondi, and judgment was rendered against Fletcher only. The notice of appeal to this court was given by the partnership. It is our conclusion that Sciambra and Bondi were never actually made parties to this action, and consequently in our further discussion of the case we treat it as an action against Fletcher only.

Point One. On this appeal appellant asks us to resolve a very difficult issue — an issue which has been before this court many times and about which there is usually a great deal of uncertainty. That is, he has asked this court to reduce the amount of the jury verdict. After a great deal of deliberation we have concluded that the judgments must be affirmed. The evidence relative to the verdicts in favor of each of the appellees will now be discussed in some detail after first making a preliminary statement. Appellant does not question the judgment of $750.00 for the damages to the automobile.

At the time of the accident on September 22, 1957, none of the appellees appeared at that time to be seriously injured, although it is shown that Mrs. Johnson did go to the drug store and secure a sedative. There were no outward signs of injuries to any of the appellees at the time of the accident nor were any shown to exist thereafter. After appellees had stayed at the scene of the accident for something like an hour or an hour and a half while an investigation was being made they continued their journey to Memphis where they had lunch and then drove to the Tri-State Fair. They remained there until rather late in the afternoon and then drove to their home that evening a distance of several miles. Apparently no one of the appellees thought it necessary to go that day to see a doctor. It also appears from the record that although each of the appellees was examined from one to two or three times no doctor seemed to think it was necessary to prescribe any kind of treatment except in the case of Mrs. Johnson.

*Mr. Johnson.* Mr. Johnson's testimony in substance was as follows: Soon after the accident his neck was somewhat stiff and stayed that way for six or eight weeks — he had some trouble in moving his head sideways but could move it up and down, and his arm and back gave him considerable trouble. He had had trouble with his back some years before the accident happened, and for this he had worn a brace but had not worn it for several months prior to the accident — he runs a service station and used to be able to change tires but is not able to do so now. Since the accident he has continued to operate his business but has employed one extra boy. He has more pain now than he had before the accident. He is unable to do heavy lifting around the station.

Dr. Gernstetter examined Mr. Johnson on May 13, 1958, but did not treat him; he stated that Mr. Johnson wanted to be examined because of symptoms complained of and that he made a general medical examination primarily of bones, joints, extremities and a

neurological examination of nerves and made X-Rays of his neck, cervical spine and lumbar region; the X-Rays showed developmental deformities with large bony processes in the sacrum. He stated that Johnson complained of pains in his neck which were relieved by turning and twisting his neck until he could make it pop; that Johnson had pains in his right leg prior to the accident but thought they were intensified since the accident; that Johnson had several years previously been given treatment and that he wore a metal brace. In the opinion of the doctor there was a good chance of spontaneous recovery of symptoms of his neck within a year after the injury but there was a chance that he would have some symptoms indefinitely from the neck injury.

Mr. Johnson was also examined by appellant's witness, Dr. Nicholas Gotten. Among other things he testified that Johnson told him that his ability to work was impaired; that it was his opinion that Johnson sustained a cervical neck strain but was making a good recovery except for the subjective symptoms which he manifested, that he was complaining of soreness in his neck, and he did not think any active treatment was indicated but thought he could continue to work. The doctor stated that it was difficult to give an opinion regarding his back injury because of the back trouble he had had previously.

The doctor's prognosis was that Johnson's condition was "more or less stabilized, that no treatment for his injury was indicated" and further stated "I think he will continue to improve in the future and that he will make a complete recovery."

In view of the above and considering that he has been forced to hire extra help around his filling station and will have to hire extra help for his wife for an indefinite period, and considering further that he is entitled to something for the partial loss of the full companionship of his wife due to her injury, we cannot say there is no substantial testimony to support a judgment in his favor in the full amount.

The questions of the extent of injury and the renumeration therefor are traditionally within the province of the jury and, as we have frequently said previously, this court will not reduce the amount of a jury verdict unless it is so grossly excessive as to shock the conscience. We are unwilling to say it is so excessive in this instance.

*As to Mrs. Johnson,* we are not willing to say that the judgment for $15,000.00 in her favor is not supported by substantial evidence. Unlike Mr. Johnson she did indicate some injury immediately after the accident and stated that she was suffering pain that afternoon and that night and that she would have called a doctor when she got home but that it was too late and she did not want to disturb him. The following day she went to a doctor who gave her a sedative and told her to come back if she did not feel better in a few days. She got no better but got worse and went to Dr. Hopkins several times; Dr. Hopkins gave her medicine and put a brace on her neck to support her chin; she got very little relief and the pain began to get worse — she was really suffering; Dr. Hopkins suggested that she go to a hospital in Memphis where she stayed three days during which time she was put in traction; she bought traction equipment which she took home and wore it at night and most of the day; this treatment gave her some relief but she was still in terrible pain; later she went to see Dr. Gernstetter some fifteen or eighteen times; she is unable to do her ordinary housework and is bothered with the lack of balance; she gets staggery and sometimes she has to go to bed to keep from falling; at one time she fell on a coffee table and bruised her leg severely and at another time she fell on a stove and was burned — the scar is still on her left elbow. Dr. Gernstetter confirms her testimony regarding treatment; he made X-Rays which show persistence of forward and backward dislocation between the 4th and 5th vertebrae and in addition showed a degenerative lipping or mild spur formation from the anterior margin of the 5th and 6th vertebrae. His diagnosis was a strain with nerve root pressure caused by a whiplash; that the

nerve root pressure is responsible for headaches; his prognosis was that she is likely to continue to experience pain in the neck, headaches and dizziness and will continue to so suffer indefinitely and may become progressively worsened as time goes on. Dr. Nicholas Gotten, who also examined Mrs. Johnson, did not specifically contradict the foregoing testimony; his opinion was that she had sustained a cervical neck strain moderately severe and that she continued to have these symptoms as a result of injuries which he thought to be legitimate. Dr. Gotten further stated that from his examination of Mrs. Johnson he found that she had a limitation of motion in her neck which was in his opinion about 25%.

*Carolyn.* The testimony relative to Carolyn's injuries to sustain a judgment in her favor in the amount of $2,000.00 is not so convincing as it is in the case of Mrs. Johnson but we are unable to say that the judgment is not supported by substantial evidence. Carolyn is a girl about 14 years of age and is an accomplished piano player, obviously requiring considerable practice. It appears as a result of her injury she is not now able to continue her practice as she did formerly. According to her testimony it is painful for her to move her head in a forward motion. Dr. Gernstetter examined her on May 13, 1958, and made X-Rays of the bones in her neck and cervical spine and right shoulder. This shows evidence of a subluxation and instability between the 2nd, 3rd, 4th and 5th cervical vertebrae — or bones in the neck; the doctor also found limitation of full rotation of the right shoulder to the extent of about 15% and stated that she complained of pains in the right shoulder blade region and that they were aggravated when she attempted to practice at the piano.

Point Two. We find no merit in appellant's contention that the court should have declared a mistrial. When Mr. Johnson was testifying he stated that the police officer investigating the accident said that he would have to take the driver to town. Appellant feels that the above statement violates Ark. Stats. § 75-1011

which prohibits the introduction of evidence concerning a conviction. This, of course, was not evidence of a conviction — in fact there is no evidence that the driver of the truck was ever arrested. We agree with the trial court in this connection that there is no inference from this statement that any arrest was made and that the driver might have been taken into town to complete the report, to get a wrecker or to see a doctor. Moreover, the court asked counsel for appellant if he desired the jury to be instructed in any manner with reference to the above testimony and no such instruction was asked for. We are unable to see anything in this occurrence that would have justified a mistrial, and we think the trial court was correct in refusing one. Appellant also asked for a mistrial because an arrest report was found lying on the table occupied by appellees' attorneys during the trial. The inference sought to be left was that the jury might have seen this report and might have construed therefrom that the driver of the truck was actually arrested. We think any such inference, however, was completely overcome since it appears that the report was ten or twelve feet away from the nearest juror and was lying sideways to the jury or with the top of the report in the direction of the jury. In the latter instance the jury would have had to read it up side down. In the absence of anything showing that any one of the jurors actually saw or read any portion of the report we conclude that the trial court was amply justified in refusing to grant a mistrial.

Point Three. There is no merit in appellant's contention that Fletcher was not properly served. A summons was issued October 14, 1958, and a return was filed thereon four days later. On November 3, 1958, appellant filed a complete answer without having made any objection to the manner or method of service. It is well established by many of our opinions that an appearance is entered by the filing of an answer.

Point Four. It is insisted by appellant that the court erred in permitting appellees to amend their complaint to conform to the proof. This has reference to

the proof that Fletcher was only one of the three partners. As heretofore indicated the record does not show that the complaint was at any time amended, therefore, the court committed no error. For procedure necessary to take advantage of defect of parties see *Kane v. Coker-Dover Mercantile Co.*, 206 Ark. 674 (pages 676-677), 177 S. W. 2d 41.

Point Five. Finally, it is contended by appellant that the court erred in giving Plaintiff's Requested Instruction No. 3. It is not incumbent on the court to consider this an assignment of error for the reason that said instruction is not set forth in appellant's abstract. See *Griffin v. Missouri Pacific Railroad Company*, 227 Ark. 312 (at page 313), 298 S. W. 2d 55; and *Porter v. Times Stores, Inc.*, 227 Ark. 286 (at page 287), 298 S. W. 2d 51.

A search of the record, however, reveals that said Instruction No. 3 told the jury that **Hollis Fletcher** would be responsible for any negligence of Henry Atkins, Jr., if any. From the above it appears, of course, that said Instruction No. 3 was a proper declaration of the law, *i.e.*, the master is responsible for the negligence of the servant. See *Ward v. Young*, 42 Ark. 542 and *Hunter v. First National Bank of Morrilton*, 181 Ark. 907, 28 S. W. 2d 712.

Although the point is not specifically raised by appellant, we think that it is in order to consider whether there is substantial evidence in the record from which the jury could have found that Fletcher was the owner of the trailer truck. We find that such substantial evidence is shown by the record. It was shown that on the side of the truck appeared this sign: "Hollis Fletcher, 604 Clearview Drive". Henry Atkins, Jr., (the driver of the truck) testified:

"Q. Did you have a sign on the side of your tractor?

A. Yes, sir, I had a sign.

Q. What did it say?

A. It said 'Hollis Fletcher, 604 Clearview Drive'.

Q. Did Mr. Sanders look at your invoices, way-bills, manifest?

A. No, sir.

Q. He didn't know where you had been?

A. He asked me where I had been.

Q. He asked you who you worked for?

A. Yes, sir.

Q. You told him Hollis Fletcher?

A. Yes, sir.

Q. Did you tell him Sciambra, Bondi and Fletcher?

A. No, sir, I didn't tell him that.

Q. But your boss is Mr. Hollis Fletcher, isn't it?

A. Yes, sir, he is boss.''

It is true that testimony was introduced which tended to show that this truck might have belonged to a partnership but appellant in his testimony leaves that question in somewhat of a confused status. It shows that some of the trucks had the name of one partner on them and others had the name or names of still another partner on them but no explanation was given as to why this was true. It would place an unreasonable burden on appellees to require them to explore all of the ramifications of a partnership which was domiciled in another state in order to determine the exact status of each individual partner. Taking the record as a whole we find there is substantial evidence to support the jury's verdict against Fletcher.

In accordance with the above, the several judgments rendered by the trial court will be affirmed.

Affirmed.